*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ATA ELIA DABISH,

Defendant-Appellant.

UNPUBLISHED
September 10, 2019

No. 342699
Wayne Circuit Court
LC No. 16-004493-01-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

YAS YATOMA,

Defendant-Appellant.

No. 343020
Wayne Circuit Court
LC No. 16-004493-03-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DEVIN MONAIR-DONTE PETTWAY,

Defendant-Appellee.

No. 344557
Wayne Circuit Court
LC No. 16-004493-04-FH

---

Before: JANSEN, P.J., and CAMERON, and TUKEL, JJ.

PER CURIAM.

-1-

Defendants Ata Dabish, Yas Yatoma, and Devin Monair-Donte Pettway appeal as of right their convictions by a single jury following a joint trial. In Docket No. 342699, Dabish appeals his convictions of twelve offenses: (1) conspiracy to commit racketeering, MCL 750.159i(4); (2) racketeering, MCL 750.159i(1); (3) conspiracy to commit arson of an insured building with intent to defraud, MCL 750.76(1)(b) and MCL 750.157a; (4) arson of an insured building with intent to defraud, MCL 750.76(1)(b); (5) two counts of conspiracy to commit arson of insured personal property with intent to defraud, MCL 750.76(1)(c) and MCL 750.157a; (6) two counts of arson of insured personal property with intent to defraud, MCL 750.76(1)(c); (7) two counts of conspiracy to commit third-degree arson, MCL 750.74 and MCL 750.157a; and (8) two counts of third-degree arson, MCL 750.74. The trial court imposed (1) four terms of 4 to 20 years' imprisonment for each of the two racketeering offenses and for each of the two insured building offenses and (2) eight terms of 3 to 10 years' imprisonment for the eight remaining offenses. We affirm.

In Docket No. 343020, Yatoma appeals his conviction of conspiracy to commit third-degree arson, MCL 750.74 and MCL 750.157a; the trial court sentenced him to three years' probation, with the first nine months to be served in jail. We affirm Yatoma's convictions and sentences, but remand for the limited, ministerial task of correcting his judgment of sentence.

In Docket No. 344557, Pettway appeals his convictions of conspiracy to commit third-degree arson, MCL 750.74 and MCL 750.157a, and third-degree arson, MCL 750.74. The trial court sentenced him to concurrent terms of three years' probation, with the first year to be served in jail. We affirm his convictions and sentences, but remand for the limited purpose of establishing a factual basis for the $1,300.00 in costs imposed under MCL 769.1k(1)(b)(*iii*), or adjusting the costs imposed.

## I. RELEVANT FACTUAL BACKGROUND

At trial, the prosecution presented evidence that showed that Dabish and prosecution witness Sylvester Bell—who testified pursuant to a plea agreement—formed an informal partnership to burn vehicles and buildings in Detroit to obtain insurance money; others, such as Yatoma and Pettway, were sometimes involved in their scheme. Four fires are at issue in this case: a fire at a carwash ("the carwash fire") in August 2015, a fire at a store called the Sea of Liquor ("the Sea of Liquor fire") in December 2015, a fire at the Lakepointe Street home of Bell ("the Lakepointe fire") in February 2016, and a fire at a store called "Sam D's" ("the Sam D's fire"), also in February 2016. Dabish was alleged to have been involved, in some manner, with all four fires, and was convicted accordingly. Yatoma and Pettway were charged and convicted only in connection with the Sea of Liquor fire. A fourth defendant, Kelly Dabish ("Kelly"), was alleged to have been involved with the Sam D's fire and was tried and convicted accordingly, but he is not a party to the present consolidated appeals.

## II. DOCKET NO. 342699

### A. PROSECUTORIAL ERROR

-2-

In Docket No. 342699, Dabish first argues on appeal that the prosecution improperly vouched for Bell's credibility as a key prosecution witness by intentionally eliciting from him that his plea agreement included a provision for him to tell the truth. We disagree.

In general, this Court reviews claims of prosecutorial error to determine whether "the prosecutor committed errors during the course of trial that deprived [the] defendant of a fair and impartial trial." *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). However, Dabish did not object below to the questioning he deems improper on appeal, and therefore we review this issue under the plain error doctrine. *Id*. Under this doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected substantial rights," i.e., "affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Dabish is correct that a prosecutor "may not vouch for the credibility of witnesses by claiming some special knowledge with respect to their truthfulness." *People v McGhee*, 268 Mich App 600; 709 NW2d 595 (2005). However, no "vouching" occurred here. In *Cooper*, 309 Mich App at 90-91, this Court stated, "[t]he mere disclosure of a plea agreement with a prosecution witness, which includes a provision for truthful testimony, does not constitute improper vouching or bolstering by the prosecutor, provided the prosecutor does not suggest special knowledge of truthfulness." In *Cooper*, *id*. at 89, the prosecutor had asked one witness, " '[Y]ou understand that [a] condition of your plea bargain is that you must testify truthfully; is that true?' " The prosecutor had asked another witness, " 'Now, the condition of that plea agreement is that you come to court and testify truthfully against any co-defendants; is that true?' " *Id*. at 90. The prosecutor obtained affirmative answers to the questions. *Id*. at 89-90. When the defendant raised a claim on appeal regarding improper vouching, this Court concluded, "Because the prosecution did not make any additional comments about the credibility of [the witnesses], there was nothing improper about the prosecutor's questioning." *Id*. at 91.

*Cooper* is directly on point with the present case. The only prosecutorial "comment" that Dabish takes issue with is the prosecutor's elicitation from Bell that a provision of his plea agreement required him to tell the truth. *Cooper* makes clear that this exchange was not improper. In addition, Dabish's attorney did not, contrary to Dabish's argument, render ineffective assistance by failing to object. Indeed, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. JUDICIAL PARTIALITY

Dabish next argues that during Bell's testimony, the trial court, by way of a leading question, acknowledged that because of Bell's plea agreement, Bell no longer had a reason to lie. Dabish contends that the question was prejudicial and warrants a new trial. We disagree.

Dabish did not object to the question below, and accordingly, we also review this issue under the plain error doctrine. *Carines*, 460 Mich at 763.

During cross-examination of Bell by the attorney of Kelly[1], another defendant, the following exchange took place:

Q. Let's see, at one point you are telling us today, that you are being sincere, correct?

A. (No response.)

Q. Is that what you're saying?

A. That's part of my plea bargain, that I must get up here and tell what I did, what happened, how I did it, you know, the whole thing.

Q. And … when you were talking today you say you are being sincere, didn't you when you were talking to [a police officer] you used the same words "sincere" when you were [initially] lying to him?

A. Did I use the word "sincere"?

Q. Yeah.

A. Did I use that word?

Q. Did you say—

A. —I—

Q. —sincere when you—

A. —if you can find it in my testimony and I can recall, I'll say I said it. There is no reason to lie now.

Q. Because you got your deal?

A. (No response.)

Q. Right? Because you're not in jail—

A. So now, who, who won't—

Q. —you know—

---

[1] A fourth defendant, Kelly Dabish, was also alleged to have been involved in the Sam D's fire and was tried and convicted accordingly. However, Kelly is not a party to the present consolidated appeals.

*THE COURT*: *You don't have any reason to lie now, because you know you're not going to jail, right?*

*THE WITNESS*. Thank you.

*BY MR. ROCKIND [KELLY'S ATTORNEY]*:

*Q*. So you are down at the station, and you are trying to lie about the fire that you set to your own truck, right?

*A*. Of course.

Dabish takes issue *only* with the italicized question by the court, claiming that this question informed the jury that the court found Bell to be credible.

MRE 614(b) indicates that a trial court "may interrogate witnesses[.]" However, a court must not "pierce the veil of judicial impartiality." *People v Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996). " 'A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.' " *People v Willis*, 322 Mich App 579, 588; 914 NW2d 384 (2018), quoting *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). "A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias." *Willis*, 322 Mich App at 588. An appellate court, in determining whether a judge pierced the veil of impartiality, must consider the context and should consider whether curative instructions were issued. See *Stevens*, 498 Mich at 172.

When reading the challenged question in context, it is apparent that the court did not pierce the veil of impartiality. The cited exchange occurred shortly after the court expressed frustration with Kelly's attorney for going over the same ground—Bell's initial lies and his current claim to be telling the truth—again and again. The trial court said, "Mr. Rockind, let's be reasonable. He said he denied everything, what else do you want him to say? He lied, there is no question about it." When the attorney continued in the same line of questioning and Bell struggled to respond to the attorney's questions, the court summarized what Bell was trying to express. Bell's response of "[t]hank you" shows that he was grateful for the court's ability to clarify what he was attempting to convey.

Moreover, shortly after the cited exchange, the trial court reprimanded Bell when Bell attempted to ask a question of the attorney, showing that the court was, throughout the questioning, simply trying to move the trial along in an orderly fashion. As aptly noted by the prosecutor on appeal, the question being challenged by Dabish "was not an instance of the trial judge making a finding that the witness was not lying, but rather the judge breaking the impasse between attorney Rockind and witness Bell by cutting to the chase of what Bell was trying to say." The trial court was exercising its powers to move the proceedings along. See *Willis*, 322 Mich App at 591. In addition, the trial court instructed the jury as follows:

[W]hen I make a comment or give an instruction I am not trying to influence your vote or express a personal opinion about this case. If you believe that I have an

opinion about how you should decide this case, you're wrong. You must pay no attention to that opinion if you have one.

You are the only judges of the facts and you should decide this case from the evidence.

And ladies and gentlemen, I . . . at times . . . have commented to the lawyers about things, don't let that lead you to believe that I have any opinion about this case, because I don't.

Under these circumstances, there was no piercing of the veil of judicial impartiality. Moreover, given that the court's question made sense, in context, as an attempt to summarize what Bell was trying to say and to move the proceedings along, Dabish's attorney's failure to object did not fall below an objective standard of reasonableness. *Ackley*, 497 Mich at 389. Therefore, contrary to Dabish's contention, the failure to object did not constitute ineffective assistance of counsel. *Id*.

## C. SUFFICIENCY OF THE EVIDENCE

Finally, Dabish argues that the prosecution presented insufficient evidence for his racketeering convictions. Again, we disagree.

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This court "review[s] the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*.

MCL 750.159i(1) states that "[a] person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." MCL 750.159i(4) states that "[a] person shall not conspire or attempt to violate subsection (1) . . . ." MCL 750.159f(a) defines "enterprise" as "includ[ing] an individual, sole proprietorship, partnership, corporation, limited liability company, trust, union, association, governmental unit, or other legal entity or a group of persons associated in fact although not a legal entity."

MCL 750.159f(c) states:

"Pattern of racketeering activity" means not less than 2 incidents of racketeering to which all of the following characteristics apply:

(*i*) The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.

(*ii*) The incidents amount to or pose a threat of continued criminal activity.

(*iii*) At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity.

Finally:

"[R]acketeering" means committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain, involving any of the following:

\* \* \*

(l) A felony violation of [MCL 750.72, MCL 750.73, MCL 750.74, MCL 750.75, or MCL 750.77], concerning arson. . . . [MCL 750.159g.]

Dabish's first argument with regard to his sufficiency issue is that "[t]here is, and cannot be, a one man enterprise" and that "[t]here is no evidence of a separate and distinct individual or any other legal entity which is distinct." In *People v Kloosterman*, 296 Mich App 636, 640; 823 NW2d 134 (2012), this Court, interpreting MCL 750.159i(1), stated that "a defendant, acting alone, cannot be *both* the person *and* the enterprise." The Court concluded that "[t]o associate, a person must necessarily align or partner with *another* person or entity." *Id*. It stated, "Because no evidence was presented in this case to show that defendant associated with or was employed by any other physical or legal person or entity, there was insufficient evidence to support his conviction [of] conducting a criminal enterprise[.]" *Id*. at 642.

Bell testified that he and Dabish "kind of took on this partnership." He said that he and Dabish were "together every day" and "kind of in this partner state of mind" when it came to setting fires. He and Dabish had a plan to set the carwash on fire, Dabish gave Bell "orders" regarding the Sea of Liquor fire, and Dabish planned the Sam D's fire with Bell.[2] Contrary to Dabish's argument, the prosecutor did not support the racketeering convictions solely with evidence of Dabish acting alone. The evidence showed that Dabish was acting in a partnership *with Bell* to commit arson for financial gain.

Dabish also contends that a racketeering conviction cannot be based solely on the underlying acts and that something more must be presented to establish an "enterprise." But even assuming the accuracy of this contention, Bell, beyond testifying about the individual conspiracies and individual fires, stated that he and Dabish were in a "partnership" with regard to setting fires. As such, the prosecutor *did* present evidence beyond the acts themselves to show a racketeering "enterprise."

---

[2] The Lakepointe fire involved only violations of MCL 750.76, which is not listed in MCL 750.159g(l).

Citing *Boyle v United States*, 556 US 938, 947; 129 S Ct 2237; 173 L Ed 2d 1265 (2009), Dabish contends that the enterprise must have a "structure" and implies that such a structure was not shown in the present case. *Boyle*, 556 US at 945-946. In *Boyle*, the United States Supreme Court said that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. The *Boyle* Court stated that an enterprise need not have "a hierarchical structure," that "different members may perform different roles at different times," and that the organization must simply be "a continuing unit that functions with a common purpose." *Id.* at 948. Here, we conclude that the prosecution adequately demonstrated the existence of a structure. Indeed, the evidence showed a longstanding relationship between Dabish and Bell that existed for the purpose of obtaining money through arson.[3] Based on the foregoing, Dabish's claim that the prosecution presented insufficient evidence to support his convictions is without merit.

III. DOCKET NO. 343020

A. SUFFICIENCY OF THE EVIDENCE

In Docket No. 343020, Yatoma first argues that the prosecution presented insufficient evidence to sustain his conviction of conspiracy to commit third-degree arson at the Sea of Liquor store. We disagree.

MCL 750.74(1) states, in part:

> [A] person who does any of the following is guilty of third degree arson:
>
> (a) Willfully or maliciously burns, damages, or destroys by fire or explosive any building or structure, or its contents, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion.

---

[3] Dabish does not make any separate arguments about the conviction under MCL 750.159i(4) for conspiring to commit racketeering. We note, however, that direct and circumstantial evidence can be considered in assessing sufficiency of the evidence claims. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. An inference from Bell's testimony is that he and Dabish conspired to conduct a racketeering enterprise. We lastly note that Dabish makes a claim of cumulative error. However, because Dabish established no errors in the context of his first three issues on appeal, there are "no errors that can aggregate to deny defendant a fair trial." *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003).

MCL 750.157a states, in part, that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy[.]"

There was overwhelming evidence of the crime of third-degree arson; indeed, Bell was shown on video footage setting fire to the Sea of Liquor store. The question is whether the prosecutor presented adequate evidence that *Yatoma* conspired with one or more persons to commit this crime.

Bell testified, in relevant part, as follows: Dabish told Bell that he had asked Pettway to set the Sea of Liquor store on fire but that Pettway could not "get the job done." On December 7, 2015, Pettway "went by hisself trying to burn the store up" but "couldn't set the store on fire." Dabish, Bell, and Yatoma discussed burning the liquor store, and Yatoma asked Bell if he could "get it done." Bell said he could "get it done," and he met with Pettway at Dabish's carwash property; Pettway had gasoline and a lighter. Bell went to the liquor store and set it on fire.

In determining whether the prosecution offered sufficient evidence to support a conviction, direct and circumstantial evidence can be considered. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Moreover, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. A reasonable inference from Yatoma's question to Bell, when viewed in context, is that Yatoma and Bell conspired to commit third-degree arson at the Sea of Liquor store. Contrary to Yatoma's assertion on appeal, there was evidence of his participation in a conspiracy beyond his mere presence at a discussion regarding the proposed burning of the store. In addition, even if, as argued by Yatoma on appeal, there was already an existing agreement to burn the store before Yatoma asked his question of Bell, a person can be a party to a continuing conspiracy if he or she knowingly cooperates to achieve the goal of the conspiracy. *People v Hunter*, 466 Mich 1, 7; 643 NW2d 218 (2002). The evidence showed that Yatoma actively took part in the conspiracy to burn the Sea of Liquor store by participating in having Bell accomplish the arson.[4]

## B. JUROR INFLUENCE

Yatoma next argues that the trial court erred by inadequately investigating Pettway's inappropriate interaction with a juror, during which Pettway said that Bell was a rapist. We disagree.

After being informed of a conversation that occurred between Pettway and a juror, the trial court interviewed the juror and ultimately excused him and seated an alternate. Yatoma did not argue below, as he does on appeal, that the trial court should have held a hearing to

---

[4] Also, we note that it was Yatoma, out of all the involved individuals, who had ties to the owner of the liquor store; the owner's sister was married to Yatoma.

determine whether other jurors, aside from the one who was excused, heard Pettway's comment. As such, the issue is unpreserved. See *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Yatoma asserts that "the other co-defendants' objections were sufficient to preserve this issue for Mr. Yatoma," but the other defendants did not, in fact, argue that the court should have held a hearing to determine whether any other juror heard the comment.[5] As noted, this Court reviews unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

In *People v Fletcher*, 260 Mich App 531, 539; 679 NW2d 127 (2004), this Court stated, "where there is evidence to suggest the verdict was affected by influences external to the trial proceedings, courts may consider juror testimony to impeach a verdict." Moreover, to establish error requiring reversal based on external influences on the jury, a defendant must show that the jury was exposed to extraneous influences and that these influences created a substantial and real possibility of affecting the verdict. *Id.* at 540; see also *People v Stokes*, 501 Mich 918; 903 NW2d 194 (2017).

Yatoma notes, correctly, that the juror in question stated that the comment from Pettway occurred when the juror was "[s]itting by the jury, you know where the jury seats are." Accordingly, Yatoma argues, "the jurors *may* have been exposed to extraneous influences." (Emphasis added.) But there was no evidence that the remaining jurors were *actually* exposed to extraneous influences. The juror in question said that Pettway asked him a question about a door, walked away, and "then came back *to me* and" made the statement about Bell. (Emphasis added.) At no time did the juror state that Pettway made the statement to any other juror or that any other juror heard Pettway's remarks. In addition, while some of the attorneys advocated for removing the juror in question (an action that the trial court did in fact undertake), no attorney argued that other jurors had likely been exposed to Pettway's comments. The Michigan Supreme Court in *Carines*, when discussing the plain error doctrine, defined a plain error as one that is "clear or obvious[.]" *Carines*, 460 Mich at 763. In light of the circumstances, Yatoma has not established a clear or obvious error with regard to the court's handling of the situation.

Yatoma cites federal cases in an attempt to support his argument that the court was required to conduct an additional hearing. Even disregarding the nonbinding nature of these cases, they are inapposite because they involved inadequate investigations into allegations of actual juror involvement in improper actions. See *United States v Herndon*, 156 F3d 629, 630 (CA 6, 1998) (a juror said he may have had prior business dealings with the defendant, and defense counsel wanted to question this juror), *United States v Walker*, 1 F3d 423, 429 (CA 6, 1993) (all jurors were given improper access to certain transcripts and redacted materials), and *United States v Corrado*, 227 F3d 528, 533, 535 (CA 6, 2000) (an outside party informed the defendant that he had a " 'friend' " on the jury who could help the defendant and could " 'carry two or three of the [other] jurors with him' "). The present case is different because the trial

---

[5] Dabish's attorney argued that Pettway had prejudiced his client in front of the jury, but this was in connection with Pettway's having "jump[ed] up" and made statements, out of turn, during trial.

court did question the involved juror, and Yatoma is merely *speculating* that any other jurors were involved; it is not "clear or obvious" that any were. *Carines*, 460 Mich at 763.

Moreover, even if a plain error did occur, Yatoma has not established that it was outcome-determinative. *Id*. Yatoma argues that Pettway's statement "in all likelihood[] supplemented the prosecution's proofs, in that it communicated to the jury that one or more of the defendants was engaging in improper juror influence." However, there was nothing linking Yatoma to the statement. Accordingly, we conclude that Yatoma's argument is without merit.

## C. SEVERANCE

Third, Yatoma argues that the trial court erred by failing to afford him a separate trial or at least a separate jury. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to deny a motion for severance. *People v Hana*, 447 Mich 325, 331; 524 NW2d 682 (1994), amended subnom *People v Rode*, 447 Mich 1203 (1994), and amended subnom *People v Gallina*, 447 Mich 1203 (1994).

MCR 6.121 states, in part:

> **(C) Right of Severance; Related Offenses.** On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.

> **(D) Discretionary Severance.** On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

In *Hana*, 447 Mich at 346-347, our Supreme Court stated:

> We . . . hold that, pursuant to MCL 768.5[6] . . . and MCR 6.121(D), the decision to sever or join defendants lies within the discretion of the trial court. Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to make this showing in the trial court, absent any significant

---

[6] MCL 768.5 provides, "When 2 or more defendants shall be jointly indicted for any criminal offense, they shall be tried separately or jointly, in the discretion of the court."

indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision.

Only Dabish and Kelly filed written motions to obtain separate trials. Yatoma's attorney stated at the motion hearing, "I'm just joining in." Dabish's attorney asserted that his argument for severance was different from the other defendants' arguments because his defense was going to be based, in part, on the allegedly contentious history between Dabish and Detective James Kraszewski (one of the lead investigators) and between Dabish and Bell. The attorney asserted that he would be arguing that (1) Bell concocted stories about Dabish because of their soured relationship and (2) Detective Kraszewski sought charges against Dabish maliciously because the detective wanted to punish Dabish for unrelated matters. Yatoma's attorney stated:

> Your Honor, as it relates to Mr. Yatoma, I would like to join in the motion to sever. I believe that it would severely prejudice my client if he is tried alongside of Mr. Ata Dabish. My client will be severely, severely prejudiced by this back and forth testimony regarding Mr. Ata Dabish and Mr. Bell, and this thing that Mr. Ata Dabish has issues with Bell and the investigator, and my client will be severely prejudiced because he has to sit here and listen to, or be a part of testimony that has absolutely nothing to do with him.

> My client is only charged regarding . . . one piece of property. And, the jury could throw him under the bus along with the pomp and circumstance that's going to get strewn out regarding this investigator and Mr. Dabish's past. I don't want my client to be a part of that. This is the reason why I'm joining in the motion.

Yatoma's attorney was arguing that Dabish's defense strategy was somehow harmful to Yatoma. Indeed, to a large extent, the various attorneys and the trial court were focusing, at the motion hearing, on whether the defenses of the various defendants were antagonistic. That, however, is not the focus of Yatoma's argument on appeal, and indeed the various defenses were *not* antagonistic; the defense attorneys all argued about the alleged unreliability of Bell's testimony and implied that the allegations of criminal behavior had been manufactured. Yatoma's focus on appeal is whether it was overly prejudicial for Yatoma to be tried with the other defendants because he was charged with only one offense, but the jury heard "testimony [about] multiple conspiracies and conducting criminal enterprises."

The *Hana* Court stated that "[i]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice" to require severance. *Id*. at 349 (quotation marks and citation omitted). The Court, however, provided the following examples of what it referred to as "potentially reversible prejudice":

> Such a risk [of prejudice requiring reversal] might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly

-12-

different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. [*Id*. at 346 n 7 (quotation marks and citations omitted).]

Yatoma was charged only in connection with the Sea of Liquor fire, but Bell, in testifying about the carwash fire, stated that Yatoma assisted Bell in pretending to perform cement work at the carwash while Dabish set the actual fire. He also testified that Yatoma assisted in covering up the carwash incident by facilitating false land-contract payments between Dabish and Bell. But Yatoma has not established prejudice with regard to the "carwash" testimony because, in a separate trial, that testimony would have been admissible under MRE 404(b)(1) as part of Yatoma's plan or scheme to work in concert with Bell and Dabish in unlawfully burning buildings. See, generally, *People v Hine*, 467 Mich 242, 253; 650 NW2d 659 (2002), and *People v Magyar*, 250 Mich App 408, 413-414, 416-417; 648 NW2d 215 (2002).

Aside from the "carwash" testimony from Bell, there was a potential for prejudice because Dabish, in particular, had a "markedly different degree[] of culpability" from Yatoma, and the jury heard about two fires not involving Yatoma. *Hana*, 447 Mich at 346 n 7. However, severance is mandated only when a defendant "clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Id*. at 346. Yatoma's attorney, with his untenable arguments below that focused on an allegedly antagonistic defense, did not make such a demonstration. The *Hana* Court did say that reversal of a joinder decision can occur if there is a "significant indication on appeal that the requisite prejudice in fact occurred at trial[.]" *Id*. at 347. Such a significant indication is not present. The court instructed the jury that "[i]f any evidence was limited to one defendant you should not consider it as to any other defendant" and stated, "[Y]ou must consider each defendant separately." All four defense attorneys at trial focused on the credibility of Bell, and the jury, by virtue of their verdict, evidently found him to be a credible witness. In addition, the Sea of Liquor fire (i.e., the fire supporting Yatoma's conviction) had the most corroborating evidence out of all the fires, in the form of video footage. And again, evidence of Yatoma's involvement in the carwash fire could have been presented at a separate trial under MRE 404(b)(1) in order to show that Yatoma, in conspiring to burn the Sea of Liquor, was performing part of a scheme or plan. It is simply not apparent that the evidence of the Lakepointe fire and the Sam D's fire somehow prejudiced the jury to such an extent that they found Yatoma guilty when they otherwise would not have. Yatoma has not demonstrated that the failure to have a separate trial or a separate jury requires reversal.

## D. SENTENCING

Finally, Yatoma argues that the trial court improperly relied on his assertion of innocence when sentencing him. Again, we disagree.

Yatoma argues as follows in his brief on appeal:

It is clear that the sentence decision was predicated primarily on Mr. Yatoma's assertion of innocence at sentencing. Such a sentencing consideration renders the sentence imposed invalid as a matter of law, particularly when the

assertion of innocence took away any real consideration of an intermediate sanction, as opposed to prison.

In the concluding sentences of his argument, Yatoma states, "It is clear from the comments made by the sentencing judge that *the decision to impose prison* was based on a refusal to admit guilt, and a full resentencing is required." (Emphasis added.)

Yatoma, however, was not sentenced to prison; he was sentenced to three years of probation with the first nine months to be served in jail. This was an intermediate sanction. See MCL 769.31(b). Accordingly, the premise of Yatoma's appellate argument is faulty. And even if one were to interpret his argument as invoking a challenge to the *jail* term imposed, this challenge would be moot. In *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994), the defendant argued that his sentence violated the principle of proportionality, but this Court declined to review the issue because the defendant had already served his minimum sentence. In reaching this decision, the Court stated, "Where a subsequent event renders it impossible for this Court to fashion a remedy, an issue becomes moot." *Id*. Yatoma was sentenced in February 2018, and nine months (the length of Yatoma's imposed jail term) have long since passed. At present, the Offender Tracking Information System lists him as a probationer. It is impossible for this Court to remedy the fact that Yatoma was sentenced to nine months in jail.

We note, however, that Yatoma's judgment of sentence incorrectly notes that his conviction was based on a plea. Accordingly, we remand Yatoma's case for ministerial task of correcting this clerical error.

IV. DOCKET NO. 344557

A. SUFFICIENCY OF THE EVIDENCE

In Docket No. 344557, Pettway first argues that the prosecution presented insufficient evidence to sustain his convictions of third-degree arson and conspiracy to commit third-degree arson. We disagree.

As noted, MCL 750.74(1) states, in part:

[A] person who does any of the following is guilty of third degree arson:

(a) Willfully or maliciously burns, damages, or destroys by fire or explosive any building or structure, or its contents, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion.

In addition, MCL 750.71(b) defines "burn" as "setting fire to, or doing any act that results in the starting of a fire, or aiding, counseling, inducing, persuading, or procuring another to do such an act."

Bell testified that Pettway was the "lookout" on December 10, 2015, for the Sea of Liquor fire and that Pettway supplied the gas and a lighter for the fire. Bell identified Pettway on

the Sea of Liquor video footage. Accordingly, viewing the evidence in the light most favorable to the prosecution, *Lane*, 308 Mich App at 57, there was sufficient evidence to prove beyond a reasonable doubt that Pettway aided Bell in setting the Sea of Liquor fire, see MCL 750.71(b). While the police, upon initially viewing the video footage, thought that the "lookout" person on the footage was Caucasian, and Pettway is not Caucasian, "a reviewing court is required to . . . make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). In other words, this Court must credit Bell's testimony. There was sufficient evidence to support Pettway's conviction of third-degree arson.

MCL 750.157a states, in part, that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy[.]"

Bell testified that Pettway tried to set the Sea of Liquor store on fire before December 10 but was unsuccessful. According to Bell, Dabish told him that he had asked Pettway to set the store on fire but that Pettway could not "get the job done." Bell testified that he told Dabish and Yatoma that he could accomplish the task, and that same day or possibly the day afterwards, he met with Pettway. At this meeting, Pettway brought the gas and lighter for setting the fire. Bell averred that the day after the fire, Dabish gave Pettway and Bell $5,000, which the two split.

As noted, in assessing sufficiency of the evidence claims, direct and circumstantial evidence can be considered, and "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. Given that (1) Pettway tried earlier to set the Sea of Liquor store on fire at the request of Dabish; (2) Pettway, carrying gas and a lighter, met with Bell shortly after Bell told Yatoma and Dabish that he would burn the store; (3) Pettway thereafter aided Bell in setting the fire; and (4) Pettway was paid by Dabish for his role in the fire, a reasonable inference is that Pettway conspired "with 1 or more persons to commit" third-degree arson. MCL 750.157a. Pettway's conspiracy conviction was supported by sufficient evidence.

## B. SEVERANCE

Pettway next argues that his defense was antagonistic to and inconsistent with his co-defendants' and that he should have had a separate trial or a separate jury. We disagree.

Because Pettway's attorney did not adequately raise this issue below, it is not preserved for appellate review. *Grant*, 445 Mich 546. Accordingly, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Pettway did not provide the trial court with an affidavit or make an offer or proof that clearly, fully, and affirmatively demonstrated that severance was necessary. *Hana*, 447 Mich at 346. There is also no "significant indication on appeal that the requisite prejudice in fact occurred at trial." *Id*. at 346. Pettway rests his assertion of prejudice on his claim that his defense was antagonistic to the defenses of the other defendants because Pettway "had nothing to do with the planning of these fires," whereas the other defendants did engage in planning. But Pettway does not explain how this difference in roles made his defense, which was that Bell was

-15-

not a credible witness, antagonistic to that of the other defendants, who all made the same argument.

Regarding his related claim of ineffective assistance of counsel, Pettway states that "if his trial counsel had filed . . . a motion with affidavits stating facts in support of his position that the defenses relied on by the defendants were inconsistent with each other and a joint trial may result in prejudice to Mr. Pettway, the trial court may very well have granted defendant's motion for severance or separate juries." Again, however, the defenses offered were not inconsistent. Therefore, the premise of Pettway's appellate argument is faulty. Even assuming, for purposes of argument, that Pettway's attorney should have raised a motion for severance or for a separate jury based on general allegations of prejudice as discussed in *Hana*, 447 Mich 346 n 7, there is no "reasonable probability" that such a motion, even if successful, would have affected the outcome of the trial. *Ackley*, 497 Mich at 389 (quotation marks and citation omitted). Indeed, the prosecutor still would have presented the significantly corroborated testimony of Bell and the video footage showing the "lookout" that Bell identified as Pettway. Pettway has not demonstrated that he is entitled to relief.

## C. RESTITUTION

Next, Pettway argues that the joint and several restitution amount of $470,242.13 that was ordered for the Sea of Liquor fire was without supporting documentation and a restitution hearing is required.

At sentencing, Pettway's attorney said that "the presentence [investigation] report [PSIR] is a fair report." When the court asked for any further input, the attorney asked for "work release" for Pettway, stating, "I think that the recommendation is a fair recommendation. But in order for him to give any assistance on the restitution it would be important for him to have gainful employment which he does have." The PSIR contained a recommendation for, among other things, five years' probation, with the first six months served in jail, and "restitution in the amount of $470,242.13," payable to an insurance company "jointly and severally with co-defendants." It recommended that Pettway "execute a wage assignment to pay restitution if [he is] employed and miss[es] two regularly scheduled payments." The report also stated, "Writer spoke with Mike Small of Selective Way Insurance Company who is seeking restitution in the amount of $470,242.13 which was paid to his insured, Sea of Liquor."[7]

Pettway argues on appeal that no "documentation" supported the restitution amount of $470.242.13, but the discussions at sentencing indicate that his attorney acquiesced to this amount as "fair" but argued that Pettway be granted work release in order to earn money.

---

[7] Mark Vandegraft, an executive general adjuster with Selective Insurance, testified at trial that the insurance amount paid for the liquor store was, in fact, $470,242.13.

Pettway's attorney affirmatively agreed with the amount of restitution and therefore waived the present issue. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).[8]

## D. COURT COSTS

Finally, Pettway argues that the trial court ordered him to pay $1,300.00 in court costs, but did not articulate the reasoning for imposing that amount. He argues that a remand is therefore necessary. We agree.

MCL 769.1k(1)(b) provides, in relevant part:

(b) The court may impose any or all of the following:

* * *

(*iii*) Until October 17, 2020, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.

However, "trial courts must 'establish a factual basis' from which this Court can 'determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court.' " *People v Stevens*, 318 Mich App 115, 120-121; 896 NW2d 815 (2016), quoting *People v Konopka (On Remand)*, 309 Mich App 345, 359-360; 869 NW2d 651 (2015).

Here, the trial court ordered defendant to pay $1,300.00 in court costs, however the trial court failed to articulate a factual basis for the costs imposed. "[W]ithout a factual basis for the costs imposed, we cannot determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*). *Konopka*, 309

_____

[8] We note that the jury acquitted Pettway of conspiracy to commit arson of insured real property with intent to defraud. However, the jury convicted him of conspiracy to commit third-degree arson and of third-degree arson. Pettway does *not* make the legal argument on appeal that because the jurors acquitted him on the count involving the defrauding of the insurance company, he should not be responsible for the insurance payout. He merely argues that the restitution ordered was "without documentation." At any rate, MCL 780.766(8) states that restitution shall be made to any "corporations" "that have compensated the victim . . . for a loss incurred by the victim to the extent of the compensation paid for that loss."

Mich App at 359-360. Accordingly, remand is required for the limited purpose of establishing a factual basis for the $1,300.00 in costs imposed under MCL 769.1k(1)(b)(*iii*), or adjusting the costs imposed.

In Docket No. 342699, we affirm Dabish's convictions and sentences.

In Docket No. 343020, we affirm Yatoma's convictions and sentences, but remand for the limited, ministerial task of correcting his judgment of sentence. We do not retain jurisdiction.

In Docket No. 344557, we affirm Pettway's convictions and sentences, but remand for the limited purpose of establishing a factual basis for the $1,300.00 in costs imposed under MCL 769.1k(1)(b)(*iii*), or adjusting the costs imposed. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel

-18-