*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THEODUS BATES,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 362862
Kent Circuit Court
LC No. 21-006795-FH

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of domestic violence, third offense, MCL 750.81(4). The jury acquitted defendant of assault with a dangerous weapon (felonious assault), MCL 750.82. The trial court sentenced defendant to 18 months to 5 years' imprisonment for the domestic-violence conviction. We affirm defendant's conviction, vacate his sentence, and remand for resentencing.

## I. BACKGROUND

This case stems from a series of domestic interactions between defendant and his ex-girlfriend, Rhonda Holland, on or about July 5, 2021. Defendant and Holland shared an apartment and had been in an on-again, off-again relationship for many years. The testimony at trial revealed two competing narratives regarding the events that transpired on the day of the alleged altercations. Holland testified that throughout the day defendant would briefly leave the apartment and that each time he returned he would physically assault her. The allegations of assault included dragging Holland, pulling her hair, and trying to kick her. In addition, Holland claimed that defendant twice held a knife to her throat. In contrast, defendant testified that he left their apartment in the morning that day and did not return until after midnight. Testimony from two neighbors corroborated Holland's account that defendant was present at the apartment. KM testified that while she was outside with her family for a barbecue, she saw defendant holding a knife to Holland's throat on the couple's balcony. CP testified that when she was outside with her children, she saw Holland and defendant arguing throughout the day on their balcony. During one of those arguments,

according to Posey, defendant approached Holland with a knife, put the knife to her neck, and told her, "I'm going to get you, b****."

Holland testified that after these assaults by defendant, she decided that she needed protection and armed herself with a knife. When defendant returned home after having again left the apartment, Holland chased him down the hallway of their apartment building with a knife to scare him away. Defendant then left the apartment complex, and Holland put the chain on the apartment door. Approximately 30 minutes later, Holland heard defendant attempting to open the door to the apartment unit. She immediately went to the door and told defendant to go away, but he refused to leave and continued trying to enter the apartment. Eventually, defendant broke the frame around the door and was able to push the door open but just slightly at first. Holland attempted to push the door shut; however, defendant pulled out a blue folding knife from his pocket and cut Holland's wrist as they were struggling. According to Holland, defendant then made his way into the apartment, where he helped Holland rinse out her wound. Holland grabbed a towel, wrapped it around her arm, and then began looking for her cell phone so that she could call 911. Defendant left the apartment, but he returned shortly to tell Holland that one of their neighbors called 911 for her. Holland went outside the apartment building to wait for the ambulance, but she questioned whether a neighbor had, in fact, called 911, so she dialed 911 herself. Subsequently, an ambulance arrived, and Holland was escorted to the ambulance to have her injury examined.

According to defendant, when he returned to the apartment after being gone all day, Holland yanked the front door open and attacked him. Defendant ran down the hallway to escape, and Holland chased him with knives in her hands. Defendant testified that he returned to the apartment after a few minutes and found Holland standing in the doorway holding a knife. Holland was bleeding from her wrist, so defendant told her to apply pressure to the injury while he searched for a towel. Defendant claimed that his phone had been stolen a day earlier; therefore, after he retrieved a towel for Holland, he went downstairs to ask a neighbor to call 911. Defendant then waited on the couple's balcony for the ambulance to arrive. Defendant further testified that the doorframe of the front door of the apartment had been broken two days earlier. We note that there was evidence that both defendant and Holland had been drinking and were intoxicated.

After a three-day trial, the jury returned a verdict of not guilty on the charge of felonious assault and a verdict of guilty on the domestic-violence charge. Defendant now appeals.

II. ANALYSIS

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that trial counsel was ineffective when he failed to call pertinent witnesses to aid in the defense. Defendant further contends that the trial court abused its discretion when it denied his motion for an evidentiary hearing on the matter. We disagree. Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Defendant fails to identify the names of the purported witnesses, fails to indicate the nature of their expected testimony, and generally fails to provide any relevant information about the witnesses that would facilitate appellate review of the issue. A defendant bears the burden of establishing the factual predicate for a claim of ineffective assistance of counsel, *People v Carbin*,

463 Mich 590, 600; 623 NW2d 884 (2001), and defendant has woefully failed to do so in the instant case. Accordingly, we conclude that the claim of ineffective assistance of counsel fails. Moreover, the trial court had no obligation to conduct an evidentiary hearing when there was no affidavit from a prospective witness or any offer of proof suggesting that there was a witness who could provide testimony favorable to defendant. See *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973) (a trial court should take testimony at an evidentiary hearing on a claim of ineffective assistance "if there is a factual dispute"). Defendant provided nothing that created a factual dispute on the claim of ineffective assistance of counsel premised on the alleged failure to call witnesses.[1]

## B. JURY INSTRUCTIONS

Defendant next argues that the trial court erred by failing to orally instruct the jury on the elements of the offenses after closing arguments were presented as required by MCR 2.513. Additionally, defendant maintains that to the extent that trial counsel failed to preserve or waived the issue, defendant was denied the effective assistance of counsel.

In preliminary oral instructions to the jury after the jurors were selected, the trial court instructed the jury on the elements of the charged crimes. But after proofs and closing arguments were completed, the trial court did not provide oral instructions on the elements of domestic violence and felonious assault.[2] Instead, the trial court simply referred the jurors to written instructions that they were given that detailed the elements of the charged crimes. After the jury began its deliberations, the trial court asked the prosecutor and defense counsel whether they took issue with the jury instructions. At that time defense counsel specifically indicated that he had "[n]o objection" to the instructions given by the trial court. Accordingly, defendant waived any instructional error. See *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011) (explaining that an explicit approval of a jury instruction constitutes waiver);[3] *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (waiver is the intentional abandonment or relinquishment of a known right, which extinguishes any error and forecloses appellate review).

Nevertheless, defendant bootstraps a claim of ineffective assistance of counsel in light of the waiver. In *Carbin,* 463 Mich at 599-600, our Supreme Court recited the principles that govern a claim of ineffective assistance of counsel:

---

[1] We note that defendant filed a motion to remand in this Court, arguing, in part, that an evidentiary hearing was necessary because counsel had been ineffective for failing to call witnesses for the defense. This Court denied the motion without prejudice. *People v Bates*, unpublished order of the Court of Appeals, entered April 17, 2023 (Docket No. 362862). Defendant did not attach an affidavit or an offer of proof with the motion to remand as required by MCR 7.211(C)(1)(a) ("A motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing.").

[2] In general, the trial court did provide oral instructions to the jury following closing arguments.

[3] In *Kowalski*, 489 Mich at 496, the defense attorney "stated that he did not have any objection to the instructions."

To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

MCR 2.513(N)(1) provides, in pertinent part, that "[a]fter closing arguments are made or waived, the court must *orally* instruct the jury as required and appropriate[.]" (Emphasis added.) In *People v Traver*, 502 Mich 23, 28; 917 NW2d 260 (2018), our Supreme Court held:

At issue is whether the trial court erred by providing written instructions to the jury concerning elements of the charged offenses but failing to read those instructions aloud. Although we conclude that our court rules require oral instructions, defendant here waived any claims of instructional error. Therefore, we affirm the judgment of the Court of Appeals to the extent that it held that the court rules require oral instructions, but we reverse to the extent that it held that this claim and additional claims of instructional error required reversal of defendant's convictions.[4]

In this case, the trial court was required to provide oral jury instructions on the elements of the crimes after closing arguments. And given that *Traver* and the amendment of MCR 2.513(N)(1) were a few years old at the time of our trial, we are a bit puzzled as to why the trial court thought that its course of action was appropriate. Nonetheless, because the trial court orally instructed the jury on the elements of the offenses at the start of trial, provided the jurors written instructions covering the elements of the charged crimes, and because the jury acquitted defendant of felonious assault, defendant simply cannot establish the requisite prejudice to succeed on the claim of ineffective assistance of counsel, assuming deficient performance by defendant's trial

---

[4] We note that when *Traver* was decided, MCR 2.513(N)(1) did not include the term "orally," and the Supreme Court amended the court rule in response to the *Traver* decision. See Staff Comment to 2019 Amendment of MCR 2.513(N)(1). In this case, the prosecution concedes that the trial court erred by not orally instructing the jury on the elements of the crimes after closing arguments.

counsel. In sum, we reject defendant's contention that he is entitled to a new trial on the basis of ineffective assistance of counsel.

## C. JUDICIAL IMPARTIALITY

Defendant next argues that there were three instances in which the trial court made comments or engaged in actions that demonstrated bias against defendant, effectively piercing the veil of judicial impartiality and denying him his right to a fair trial. A criminal defendant is entitled to "a neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (quotation marks and citation omitted). In *People v Biddles*, 316 Mich App 148, 151-152; 896 NW2d 461 (2016), this Court observed:

> The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo. A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. To determine whether the trial judge's conduct deprived defendant of a fair trial, we consider whether the trial judge's conduct pierced the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. This is a fact-specific inquiry, and we must consider the cumulative effect of any errors. A single instance of misconduct generally does not result in the appearance that a trial judge is biased, unless the instance is so egregious that it pierces the veil of impartiality. To evaluate the totality of the circumstances, we consider a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [Quotation marks, citations, and brackets omitted.]

"Forms of judicial misconduct may include, but are not limited to, belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *People v Stevens*, 498 Mich 162, 172-173; 869 NW2d 233 (2015). "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a). "Judicial rulings on their own, even those unfavorable to a litigant, are not sufficient to demonstrate bias." *People v Willis*, 322 Mich App 579, 593 n 1; 914 NW2d 384 (2018).

Defendant first contends that the trial court made a comment during opening statements that was improper and reflected bias. Notably, the challenged exchange actually took place during voir dire, not opening statements, and the colloquy went as follows:

[Defense counsel]: But your important decision is we have a dispute between the Prosecutor and myself. That is that my client is not willing to enter a plea of guilty because he doesn't believe he did anything wrong. Prosecutor doesn't—

*The Court*: May I see counsel, please?

(At 10:44 a.m., bench conference off the record)

(At 10:45 a.m., back on the record)

*The Court*: Counsel—ladies and gentlemen of the jury, I'm going to ask you to disregard this last comment by Mr. Smith. Don't even consider it. Don't talk about it. It should have nothing to do in any of your deliberations if you folks are on the jury ultimately.

In general, "[t]he trial court has discretion in both the scope and the conduct of voir dire." *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994). Further, "[t]he purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *Id*. at 618. Although the trial court's remarks to the jury were stern, they hardly rose to the level of being improper or inappropriate, and they certainly did not demonstrate that the court pierced the veil of judicial impartiality or was biased. While we are not privy to what was communicated during the bench conference, it is highly likely that the court interjected itself over fears that defense counsel was treading into an impermissible evidentiary area under MRE 410 (addressing the inadmissibility of pleas, plea discussions, and related statements). In the quest to seat an impartial jury, the court would have wanted to avoid any taint of the jury pool before the trial even began. Even assuming the court's action was unnecessary for purposes of seating an impartial jury, it would simply constitute an unfavorable ruling from defendant's perspective and did not reveal any bias. See *Willis*, 322 Mich App at 593 n 1.

Defendant next argues that comments the trial court made following one of defense counsel's objections were wholly unnecessary. The following pertinent exchange occurred during trial:

[Defense counsel]: I'm going to object at this point. We're getting third-party testimony of somebody not present in the courtroom. It's hearsay.

*The Court*: Counsel?

[The prosecutor]: It's not to prove the truth of the matter asserted. It's just kind of to set—to understand the setting. We—the aunt, her aunt really has no bearing on the charges of this case. And any statement made by the defendant would be an admission by a party opponent.

*The Court*: Mr. Smith, anything else?

[Defense counsel]: It's coming in through a third party, your Honor.

-6-

*The Court*:  Well, I respectfully disagree here. Hearsay under Michigan rule 801 is an out of court statement offered to prove the truth of the matter asserted. We're not—these statements are not being offered to prove the truth of the matter asserted here. I'm going to allow the questioning. Go ahead.

[Defense counsel]:  Your Honor, if they're not being used to prove the truth of the matter asserted, the jury needs to be informed of that. And two, it's irrelevant then.

*The Court*:  Mr. Smith, let's understand the rule of the game here. When there's an objection I will listen to you. I will listen to the Prosecutor. I may give you another chance. When I make my ruling, it's all preserved for the Court of Appeals. Do not raise the issue again.  Thank you.

We initially note that defendant does not argue that the trial court's evidentiary ruling constituted error; rather, defendant complains about the terseness and harshness of the court's response to defense counsel's follow-up argument that the evidence was irrelevant and that the jury needed to be informed of any limited purpose of the evidence.  Although the trial court's remarks may not have reflected the best judicial temperament, the court, ultimately, was merely exercising its authority to control the mode of presenting and objecting to evidence.  See MRE 611(a).  We cannot conclude that the trial court's comments demonstrated bias against defendant, amounted to conduct that pierced the veil of judicial impartiality, or otherwise deprived defendant of a fair trial.  Assuming the remarks constituted misconduct, they were brief, isolated, and, under the totality of the circumstances, not so egregious as to pierce the veil of judicial impartiality.  We cannot help but note that the jury acquitted defendant of the more serious charge of felonious assault, so it is difficult for us to understand the logic of defendant's argument that the trial court biased the jury against him and denied defendant a fair trial.  Reversal is unwarranted.

Lastly, defendant argues that the trial court displayed bias and partiality by revoking his bond during trial.  The trial court did so on the basis that during a break in the trial, defendant was observed by the court's law clerk entering an elevator with jurors standing nearby.  This occurrence, in the trial court's view, contravened the court's express directive to defendant not to have any contact with jurors.  We need not explore this argument in any detail given that there is no dispute that the jury was not present in the courtroom when the trial court revoked defendant's bond.  The jurors had no knowledge that the trial court took any adverse action against defendant; therefore, under no circumstance can we conclude that "it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Biddles*, 316 Mich App at 152.

In sum, we conclude that defendant has failed to overcome the heavy presumption of judicial impartiality in making his claim of judicial bias.

## D.  SENTENCING – SCORING OF OFFENSE VARIABLES

Finally, defendant argues that he is entitled to resentencing because the trial court improperly scored Offense Variables (OVs) 1, 2, and 3, where it relied on acquitted conduct to

assess points for these variables. Defendant further contends that if we conclude that the trial court erred in scoring the three OVs and order resentencing, we should also order that the resentencing take place in front of a different judge.

In *People v Horton*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360726); slip op at 2, this Court observed:

> Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. Clear error is established when the appellate court is left with a firm and definite conviction that an error occurred. This Court reviews de novo whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute. In scoring OVs, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable. When a preserved scoring error alters the appropriate guidelines range, resentencing is generally required. This Court reviews de novo issues involving the interpretation of the sentencing variables. [Quotation marks, citations, brackets, and ellipses omitted.]

With respect to OV 1, the trial court assessed 25 points, and MCL 777.31(1)(a) requires a court to assess 25 points for OV 1 when, in pertinent part, "a victim was cut or stabbed with a knife . . . ." In regard to OV 2, the trial court assessed 5 points, and MCL 777.32(1)(d) mandates a court to assess 5 points for OV 2 when, in relevant part, "[t]he offender possessed or used a . . . knife[.]" And with respect to OV 3, the trial court assessed 10 points, and MCL 777.33(1)(d) requires a court to assess 10 points when "[b]odily injury requiring medical treatment occurred to a victim."

Defendant's stance is that he was acquitted of felonious assault, i.e., assault with a dangerous weapon—the knife, so if the use or presence of the knife is removed from the equation and not considered because of the acquittal, there is no support for the trial court's scoring of OVs 1, 2, and 3. Therefore, according to defendant, the trial court's assessments of the three OVs patently violated our Supreme Court's opinion in *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019), wherein the Court held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." Acquitted conduct is conduct that "has been formally charged and specifically adjudicated by a jury." *Id*. at 620. Such conduct "is protected by the presumption of innocence" and "may not be evaluated using the preponderance-of-the-evidence standard without violating due process." *Id*. at 627. The *Beck* Court explained that "[t]o allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." *Id*. at 626-627 (quotation marks and citation omitted). Therefore, if a sentencing court punishes a defendant more severely on the basis of acquitted conduct, that defendant is entitled to resentencing. *Id*. at 629-630.

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation

omitted); see also M Crim JI 17.9.  The elements of domestic violence include (1) the commission of an assault or an assault and battery and (2) a dating relationship between the defendant and the complainant.  *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011); see also M Crim JI 17.2a.  "An 'assault' is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."  *People v Lydic*, 335 Mich App 486, 498 n 9; 967 NW2d 847 (2021)  (quotation marks and citation omitted).  A battery is a violent or forceful touching of a person or something closely connected with that individual.  *People v Leffew*, 508 Mich 625, 653; 975 NW2d 896 (2022).  The jury here was instructed consistent with these elements and definitions.

In this case, there was evidence of multiple assaults by defendant against Holland on or about July 5, 2021, with and without a knife.  We simply do not know what specific conduct the jury relied on in finding defendant guilty of domestic violence.  It may have been the evidence that defendant pulled Holland's hair, dragged her, and tried to kick her, or, conceivably, the jury could have found him guilty of domestic violence based on the evidence involving defendant's use of the knife, with the jurors simply choosing not to convict him of felonious assault for reasons unknown.  Indeed, in scoring the OVs at issue, the trial court essentially treated the evidence that defendant cut Holland with a knife when breaking through the apartment door as constituting the crime of domestic violence for which defendant was convicted.  This may or may not have been true.

Initially, we conclude that there was no error in the trial court's assessment of 5 points for OV 2 based on defendant's possession of a knife.  There was an abundance of evidence that defendant possessed a knife during his interactions with Holland.  The jury's verdict of acquittal on the felonious assault charge is not inherently inconsistent with a finding that defendant simply possessed a knife at some point in time during the various altercations with Holland.

As alluded to earlier, the trial court's scoring of OVs 1 and 3 was clearly premised on the court's findings that defendant cut Holland with a knife as he was forcing his way into the apartment through the doorway and that the resulting injury or knife wound required medical treatment.  The question becomes whether the court's findings are inconsistent with the felonious-assault acquittal.  The jury, along with ostensibly disbelieving that defendant twice held a knife to Holland's throat or determining that those instances did not amount to felonious assault, concluded that defendant did not commit a felonious assault at the door of the apartment as defendant forced his way into the unit.  We can only speculate with respect to the jury's reasoning.  Theoretically, the jurors could have found beyond a reasonable doubt that defendant assaulted Holland with a knife at the doorway and cut her, but that he did not commit a felonious assault because he *lacked the intent* to injure Holland or place her in reasonable apprehension of an immediate battery and instead only intended to gain entry to the apartment.  But we do not believe that *Beck* allows such parsing of the elements.

As quoted earlier, the *Beck* Court ruled that "[t]o allow the trial court to use at sentencing an *essential element* of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself."  *Id*. at 626-627 (quotation marks and citation omitted; emphasis added).  In *People v Stokes*, 333 Mich App 304, 309; 963 NW2d 643 (2020), this Court, construing *Beck*, explained that "a sentencing court must consider a defendant as having undertaken no act or

omission that a jury could have relied upon in finding that the *essential elements* of any acquitted offense were proved beyond a reasonable doubt." (Emphasis added.) In this case, the jury could have acquitted defendant of felonious assault in relation to the altercation at the doorway on the basis that the prosecution failed to prove beyond a reasonable doubt that defendant employed and assaulted Holland with a dangerous weapon, the knife, which of course concerns an essential element of the greater offense of felonious assault. Accordingly, *Beck* and *Stokes* dictated that the trial court, when scoring the OVs, could not take into consideration evidence that defendant assaulted Holland with a knife and cut her when he forced his way into the apartment. Therefore, the trial court erred by assessing 25 points for OV 1 and 10 points for OV 3. We are not prepared, however, to determine that zero points are the appropriate scores for OVs 1 and 3; rather, on remand, the sentencing court is to reexamine OVs 1 and 3 and assess the appropriate number of points.[5]

Defendant's total OV score was 50 points, placing him at OV level V on the applicable Class E grid for domestic violence. See MCL 777.16d; MCL 777.66. Because OV level V encompasses a point range of 50 to 74 points, MCL 777.66, and because our rulings on OVs 1 and 3 will necessarily result in a decrease in the total OV score—extent yet to be determined—and a corresponding change in the OV level, *id.*, there will be an alteration in the minimum sentence guidelines range. Therefore, resentencing is required. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

We recognize that the trial court clearly stated that it would impose the same minimum sentence of 18 months' imprisonment even if it erred in scoring the OVs as claimed by defendant. Our Supreme Court has stated that "[r]esentencing is . . . not required where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range." *Francisco*, 474 Mich at 89 n 8, citing *People v Mutchie*, 468 Mich 50, 51; 658 NW2d 154 (2003). Our remand requires a reassessment of the appropriate guidelines range; therefore, we cannot simply affirm the minimum sentence on the basis of the trial court's remarks about imposing the same sentence. Moreover, the 18-month minimum sentence could potentially reflect an upward departure depending on the calculation of the new guidelines range. In that case, the court would have to articulate reasons for the departure. See *People v Skinner*, 502 Mich 89, 134 n 25; 917 NW2d 292 (2018) ("Although trial courts are no longer required to articulate substantial and compelling reasons to justify departures, they are still required to articulate 'adequate reasons' to justify departures[.]").[6]

Finally, with respect to whether the resentencing should be conducted by a different judge, after our review of the sentencing-related proceedings, we conclude that it is not necessary to

---

[5] To be clear, aside from our ruling that the 25-point assessment for OV 1 and the 10-point assessment for OV 3 constituted error, we are making no determination whatsoever with respect to how many points, if any, should be scored for OVs 1 and 3. The trial court is the appropriate forum to address the scoring in the first instance.

[6] The trial court's cursory comment "that there's sufficient reasons to go over the guidelines" is grossly inadequate for purposes of articulating reasons for a departure.

reassign this matter to another judge for resentencing. See *People v Evans*, 156 Mich App 68, 72; 401 NW2d 312 (1986).

We affirm defendant's conviction, vacate his sentence, and remand for resentencing. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron