# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KELVIN WILLIS,

        Defendant-Appellant.

FOR PUBLICATION
January 11, 2018
9:00 a.m.

No. 334398
Wayne Circuit Court
LC No. 15-010530-01-FH

---

Before: TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

A jury convicted defendant of child sexually abusive activity, MCL 750.145c(2), possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(v), and disseminating sexually explicit material, MCL 722.675. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 15 to 40 years' imprisonment for the child sexually abusive activity conviction, two to eight years for the possession of cocaine conviction, and 2½ to 4 years for the dissemination of sexually explicit material conviction. Defendant appeals as of right. We affirm.

The 52-year-old defendant's convictions arise from his interaction with his neighbor, a 16-year-old male, in defendant's Dearborn apartment on August 12, 2015. The prosecution presented evidence that defendant spoke to the victim outside, asked the victim his age, and then invited the victim into his apartment. While inside defendant's apartment, the victim sat on the couch, defendant put his arm around the victim, and defendant used his cell phone to show the victim a video of two men engaging in sexual intercourse. Defendant offered the victim $25 if he would allow defendant to insert his fingers in the victim's anus and masturbate on the victim, and later offered the victim $100 to engage in sexual intercourse. The victim declined both offers, and thereafter, when defendant briefly left the apartment, the victim fled and reported the incident to a neighbor. The neighbor contacted police, and officers arrested defendant. During an inventory search, officers found cocaine in the pocket of defendant's pants. At trial, defendant denied any wrongdoing and asserted that the testimony of the victim and the police was inconsistent and not credible.

On appeal, defendant first argues that there was insufficient evidence to support his conviction for child sexually abusive activity. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855

(2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational tier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Initially, we reject defendant's claim that MCL 750.145c is limited to criminalizing conduct involving the production of child sexually abusive material. Whether conduct falls within the scope of a criminal statute, in this case MCL 750.145c(2), is a question of statutory interpretation that we review de novo. *People v Hill*, 486 Mich 658, 667-668; 786 NW2d 601 (2010). When construing a statute, our primary goal is to ascertain and give effect to the intent of the Legislature. *People v Perry*, 317 Mich App 589, 604; 895 NW2d 216 (2016). To that end, we begin by examining the plain language of the statute, and "where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed and enforce that statute as written." *People v Holder*, 483 Mich 168, 172; 767 NW2d 423 (2009). "[O]nly where the statutory language is ambiguous may we look outside the statute to ascertain legislative intent." *Id*.

The statute proscribing child sexually abusive activity provides:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, *or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity* or child sexually abusive material for personal, distributional, or other purposes is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. [MCL 750.145c(2) (emphasis added).]

Thus, among the types of conduct expressly proscribed by MCL 750.145c(2) is "arrang[ing] for . . . or . . . attempt[ing] or prepar[ing] or conspir[ing] to arrange for . . . any child sexually abusive *activity or* child sexually abusive *material*[.]" (Emphasis added.) MCL 750.145c(1)(n) defines "[c]hild sexually abusive activity" as "a child engaging in a listed sexual act." "Child" means "a person who is less than 18 years of age." MCL 750.145c(1)(b) and MCL 750.145c(6). A listed sexual act is defined to include "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity." MCL 750.145c(1)(i). The statute provides a separate definition for "child sexually abusive material." See MCL 750.145c(1)(o).

This Court has recognized that MCL 750.145c(2) applies to three distinct groups of persons. *People v Adkins*, 272 Mich App 37, 40; 724 NW2d 710 (2006). The first category

includes a person "who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material[.]" MCL 750.145c(2); *Adkins*, 272 Mich App at 40. This category refers to those who are engaged in the production of pornography. It is undisputed that defendant does not fall within this group. The second category includes a person who "arranges for, produces, makes, or finances . . . any child sexually abusive activity or child sexually abusive material[.]" MCL 750.145c(2); *Adkins*, 272 Mich App at 41. The last category is defined to include a person "who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material[.]" MCL 750.145c(2); *Adkins*, 272 Mich App at 41. The use of the disjunctive "or" in the second and third categories clearly and unambiguously indicates that persons who arrange for or attempt or prepare to arrange for child sexually abusive activity face criminal liability. See *Adkins*, 272 Mich App at 41. "The Legislature thus omitted from the second and third groups subject to criminal liability any requirement that the individuals therein must have acted for the ultimate purpose of creating any child sexually abusive material, a specific requirement applicable to the first group of criminals." *Id*. at 42. Accordingly, we reject defendant's argument that MCL 750.145c is limited to conduct involving the production of sexually abusive material. The allegations against defendant squarely place him within the group of persons on whom MCL 750.145c(2) imposes criminal liability.

Turning to the sufficiency of the evidence to support defendant's conviction, we conclude that, viewed in a light most favorable to the prosecution, the evidence was factually sufficient to show that defendant arranged for, or attempted to arrange or prepare for, child sexually abusive activity with the 16-year-old victim. The evidence showed that the 52-year-old defendant invited the 16-year-old victim into his apartment, showed the victim a pornographic video of two men engaging in sexual intercourse, and then offered the victim $25 to allow defendant to insert his fingers into the victim's anus while he masturbated, and later offered the victim $100 to engage in sexual intercourse. This was sufficient for a rational tier of fact to find that the essential elements of child sexually abusive activity were proven beyond a reasonable doubt. As discussed earlier, the prosecution was not required to prove that defendant's conduct involved the production of child sexually abusive material.

Our conclusion is supported by *People v Aspy*, 292 Mich App 36; 808 NW2d 569 (2011). In that case, the defendant, who was from Indiana, communicated in a website chatroom with a woman pretending to be a 14-year-old girl. *Id*. at 38. Eventually, the defendant and the woman pretending to be the 14-year-old girl made plans to meet in person, and when the defendant arrived at the address provided, the police arrested him. *Id*. at 39-40. The defendant was subsequently charged and convicted under MCL 750.145c(2). *Id*. at 38. Defendant in this case correctly points out that *Aspy* dealt with whether a Michigan court had jurisdiction over the *Aspy* defendant, but, as part of that determination, the parties in *Aspy* disputed, and the *Aspy* Court had to determine, whether the prosecution presented sufficient record evidence to support a criminal prosecution. *Id*. at 42. This Court concluded that "the prosecution presented more than sufficient evidence to allow a rational jury to conclude that defendant prepared and attempted to commit child sexually abusive activity . . . ." *Id*. at 42-43. Relying on *Adkins*, the *Aspy* Court concluded that MCL 750.145c(2) only requires that a defendant prepare for child sexually abusive activity and " 'does not require that those preparations actually proceed to the point of involving the child.' " *Id*. at 43, quoting *Adkins*, 272 Mich App at 46. The *Aspy* Court held that

there was sufficient evidence that the "defendant acted consistently with the preparations he had made to commit child sexually abusive activity" by driving "into Michigan to a location where he intended to meet a child whom he believed to be under the age of 18" and "engage in behavior wrongful under MCL 750.145c(2)." *Aspy*, 292 Mich App at 43-44.

Next, defendant argues that a new trial is required because the trial court's conduct pierced the veil of judicial impartiality and denied him a fair trial. We disagree. "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). In determining whether a trial judge's conduct deprives defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164, 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry, and this Court considers the "cumulative effect" of any errors. *Id*. at 171-172. A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id*. at 171. In evaluating the totality of the circumstances, this Court should consider a "variety of factors," including

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

In this case, defendant takes exception to the trial court limiting defense counsel's cross-examination of Dearborn Police Sergeant Brian Kapanowski about the sergeant's incorrect assumption that defendant was prohibited from being around schools pursuant to the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., and purportedly belittling defense counsel by reading out loud the substance of MRE 611 when issuing its ruling.

The following is the exchange from trial that defendant takes issue with on appeal:

> *Q*. And one of the things you were concerned about is if he could be alone with a minor, correct?
>
> *A*. I believe it was a CSC under thirteen year old, so, yes, I was concerned whether or not he could have children in the residence as well as be close to schools and difference [sic] stipulations.
>
> *Q*. In the video you didn't say anything about being close to schools, correct, that we heard?

*A*. No, but that's part of the sexual offender registry. That's what I was assuming, too. I was thinking, I should say.

*Q*. Thank you. And when you made that assumption were you saying—

*The court*: What assumption?

*Defense counsel*: What he just said, the assumption about him not being able to be near minors or be around schools.

*Q*. [by defense counsel] Whatever assumptions you made, okay, did you later come to find out after you arrested Mr. Willis that you were wrong?

*The court*: That's beyond that, [defense counsel].

*Defense counsel*: Okay.

*The court*: Hold on, one second. Okay. I just want to say that Michigan Rule Evidence 6.11 [sic] says, that the Court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence.

So as to, one, make the interrogation and presentation of effective for the ascertainment of the truth; two, avoid needless consumption of time as applies here. So that was the reason for my limiting this to what was on the video and that's my reason for stopping the last question.

One form of judicial bias is biased commentary in front of the jury. *Stevens*, 498 Mich at 173. Reversal is proper "when the trial judge's . . . comments were such as to place his great influence on one side or the other in relation to issues which our law leaves to jury verdict." *Id*. at 177 (citation and quotation marks omitted). In general, however, a trial judge's comment that is critical of or hostile to a party or his counsel is not sufficient to pierce the veil of judicial impartiality. *Jackson*, 292 Mich App at 598. A trial judge's rulings or opinions do not pierce the veil of judicial impartiality "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Id*. (citation and quotation marks omitted).

In this case, the general nature of the judicial intervention—controlling the proceedings—was not inappropriate. MRE 611(a); *Stevens*, 498 Mich at 173. It is well established that the trial court has a duty to control trial proceedings in the courtroom, and has wide discretion and power in fulfilling that duty. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). While a defendant's constitutional right to confront his accusers is secured by the right of cross-examination guaranteed by the Confrontation Clause, US Const, Am VI; Const 1963, art 1 § 20, a court has latitude to impose reasonable limits on cross-examination, *People v Sexton*, 250 Mich App 211, 221; 646 NW2d 875 (2002). Further, the trial court must "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a).

The trial court's remarks were not of such a nature as to unduly influence the jury. The record shows that the trial court appropriately exercised its discretion to control the trial to prevent improper questioning of the sergeant and avoid wasting time. Before the sergeant took the stand, the parameters of his testimony were discussed. Based on the parties' agreement, the trial court allowed a portion of a video recording from the sergeant's squad car that depicted a conversation between the sergeant and the victim. The sergeant's testimony was limited to what transpired on the recording. Defense counsel, however, sought to ask the sergeant whether his assumption that defendant could not be around schools was incorrect. Similar testimony was previously placed before the jury at trial when a detective testified that it was not correct that defendant could not be around schools. Thus, the trial court evidently prevented further exploration on this matter because it was outside the scope of the trial court's ruling regarding the sergeant's testimony, irrelevant to the proceedings inasmuch as defendant was not charged with violating the SORA, and repetitive. Defendant has provided no explanation, argument, or authority indicating how the evidentiary objection was improper and not in accordance with MRE 611(a). Instead, defendant focuses on the trial court "reading from a court rule" and the "tone and demeanor" in which the trial court recited the court rule, but fails to also observe that defense counsel's behavior of ignoring the court's ruling very likely necessitated the court's reference to MRE 611.

Before defense counsel's question that preceded the trial judge's reference to MRE 611, the trial court had interrupted defense counsel, noting that her questions about the sergeant's training were "beyond the redirect." In an apparent effort to continue, defense counsel stated: "Well, no, Judge, I understand that, but they never produced this witness." The trial court explained that defendant may call the sergeant as a defense witness, but her question was "beyond what we've gone into and what I said you should do or could cover on recross." Thus, the trial court's specific mention of MRE 611 occurred after the trial court had cautioned defendant about the limitations on cross-examination. Yet defense counsel chose to question the sergeant on a matter that was outside the trial court's ruling. Considering the totality of the circumstances, the trial court's reading of MRE 611 was not calculated to cause the jury to believe that the court had any opinion regarding the case, and was not likely to unduly influence the jury to defendant's detriment. Rather, it appears that the trial court was merely explaining its interruptions and was not intending to belittle defense counsel. Moreover, the trial court instructed the jury that the case must be decided only on the evidence, that its comments and rulings were not evidence, that it was not trying to influence the vote or express a personal opinion about the case when it made a comment or a ruling, and that if the jury believed that the court had an opinion, that opinion must be disregarded. Accordingly, to the extent that the trial court's conduct could be deemed improper, its instructions were sufficient to cure any error. *Stevens*, 498 Mich at 190.[1]

---

[1] Defendant also directs our attention to instances when the trial court issued unfavorable rulings on evidentiary matters and a request for an adjournment, which he alleges demonstrate bias. However, defendant has provided no explanation, argument, or authority indicating how the trial court's rulings were improper and not in accordance with the applicable rules. Judicial rulings on their own, even those unfavorable to a litigant, are not sufficient to demonstrate bias.

Lastly, defendant argues that he is entitled to be resentenced because the trial court imposed an unreasonable departure sentence. However, defendant incorrectly asserts that the trial court imposed a departure sentence. The trial court scored the sentencing guidelines for defendant's conviction of child sexually abusive activity, which is a class B offense. MCL 777.16g. Defendant received a total offense variable (OV) score of 10 points, which combined with his 80 prior record variable (PRV) points, placed him in the F-II cell of the applicable sentencing grid, for which the minimum sentence range is 78 to 130 months. But because defendant was sentenced as a third-offense habitual offender, MCL 769.11, the upper limit of the guidelines range was increased by 50 percent, MCL 777.21(3)(b), resulting in an enhanced range of 78 to 195 months. Thus, in sentencing defendant to a minimum sentence of 180 months, the trial court imposed a sentence within the appropriate guidelines range. Defendant does not allege a scoring error or argue that the court relied on inaccurate information when imposing sentence. Accordingly, we affirm defendant's sentence. MCL 769.34(10); *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

*Jackson*, 292 Mich App at 598. Defendant has not shown that the trial court's conduct was improper.