*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DENNIS MICHAEL PETERSON,

      Defendant-Appellant.

UNPUBLISHED
October 20, 2025
9:08 AM

No. 371211
Macomb Circuit Court
LC No. 23-000936-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DENNIS MICHAEL PETERSON,

      Defendant-Appellant.

No. 371212
Macomb Circuit Court
LC No. 23-000934-FC

---

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

In these consolidated appeals[1] arising from the alleged sexual abuse of minors KP and AA (collectively, complainants), by defendant, Dennis Michael Peterson, we consider whether the trial judge's conduct pierced the veil of judicial impartiality, depriving Peterson of a fair trial. Peterson was tried before a single jury regarding the offenses against both complainants.

---

[1] *People v Peterson*, unpublished order of the Court of Appeals, entered June 30, 2024 (Docket No. 371211). Docket No. 371211 pertains to Peterson's alleged conduct toward AA, and Docket No. 371212 involves Peterson's purported acts toward KP.

In Docket No. 371211, Peterson, appeals as of right his jury trial convictions for three counts of first-degree criminal sexual conduct (CSC-I): one under MCL 750.520b(1)(a) (sexual penetration of a person under the age of 13), and two under MCL 750.520b(1)(b) (sexual penetration of a person at least 13 but less than 16 who is a member of the same household or related to the defendant by blood or affinity). Peterson was sentenced to 25 to 35 years' incarceration for his CSC-I conviction under MCL 750.520b(1)(a), and 9 to 15 years' incarceration for each CSC-I conviction under MCL 750.520b(1)(b).

In Docket No. 371212, Peterson appeals as of right his jury trial convictions for three counts of CSC-I, MCL 750.520b(1)(a), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a person under the age of 13). Peterson was sentenced to 25 to 35 years' incarceration for each CSC-I conviction, and 29 to 180 months' incarceration for the CSC-II conviction. For the reasons set forth below, we affirm Peterson's convictions and the sentences imposed.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Peterson is complainants' grandfather. During trial, KP testified, over the course of two days, regarding Peterson's repeated sexual assaults of her, beginning when she was 5 years old and lasting until she was 10 years old. On the second day of the trial proceedings, KP testified on cross-examination for approximately two hours without disruption. Cross-examination continued the subsequent day and the trial court did not interject for about 50 pages of testimony. The trial court then interrupted defense counsel numerous times, instructing her to stop repeating statements that had already been asked and answered. The court further continually directed defense counsel to ask new questions, rather than repeat KP's prior testimony. AA additionally testified over two days, describing a pattern of sexual assaults by Peterson that occurred when she was between the ages of 12 and 20. During the cross-examination of AA, the trial court similarly precluded defense counsel from continuing to reiterate AA's previous testimony.

Following a five-day jury trial, Peterson was convicted and sentenced as provided earlier. This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

To preserve a claim of judicial impartiality or bias, the litigant must object to the alleged misconduct in the trial court. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Because Peterson did not raise the issue of judicial bias in the trial court, this issue is unpreserved for appellate review.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). When a claim of judicial bias is unpreserved, this Court reviews the issue "for plain error affecting defendant's substantial rights." *Jackson*, 292 Mich App at 597. As stated in *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (quotation marks and citation omitted):

To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights. An error affects substantial rights when it impacts the outcome of the lower-court proceedings. Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence.

## III. ANALYSIS

Peterson argues that the trial court's conduct during defense counsel's cross-examination of complainants pierced the veil of judicial impartiality. We disagree.

"A criminal defendant is entitled to a 'neutral and detached magistrate.' " *Jackson*, 292 Mich App at 597 (citation omitted). "A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias." *People v Willis*, 322 Mich App 579, 588; 914 NW2d 384 (2018). "In determining whether a trial judge's conduct deprives a defendant of a fair trial, this Court considers whether the trial judge's conduct pierces the veil of judicial impartiality." *Id*. (quotation marks and citation omitted). "When the issue is preserved and a reviewing court determines that a judge has pierced the veil of judicial impartiality, a structural error has been established that requires reversing the judgment and remanding the case for a new trial." *Stevens*, 498 Mich at 178.

"A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171 (footnote omitted). "This inquiry requires a fact-specific analysis. A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. In *Stevens*, our Supreme Court provided that the reviewing court should inquire into a number of factors, including, but not limited to:

> [T]he nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

"The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case." *Id*. "Because this list of factors is nonexhaustive, a reviewing court may consider additional factors if they are relevant to the determination of partiality in a particular case." *People v Swilley*, 504 Mich 350, 371; 934 NW2d 771 (2019) (quotation marks and citation omitted). "[T]he aggrieved party need not establish that each factor weighs in favor of the conclusion that the judge demonstrated the appearance of partiality for the reviewing court to hold that there is a reasonable likelihood that the judge's conduct improperly influenced the jury." *Stevens*, 498 Mich at 172.

## A. THE NATURE OF THE JUDICIAL CONDUCT

Peterson first argues that the trial court judge improperly restricted defense counsel's cross-examination of complainants. "In reviewing claims of judicial partiality, a reviewing court must first examine the nature or type of judicial conduct itself." *Swilley*, 504 Mich at 371. "Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Stevens*, 498 Mich at 172-173.

"A trial court has broad discretion in regard to controlling trial proceedings." *People v Taylor*, 252 Mich App 519, 522; 652 NW2d 526 (2002). "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993); see also US Const, Am VI. Defendants are "guaranteed a reasonable opportunity to test the truth of a witness's testimony." *Adamski*, 198 Mich App at 138. But "[t]he right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *Id*. This Court has explained:

> Although a defendant has the right to cross-examine his accusers as secured by the Confrontation Clause, a court has wide latitude to impose reasonable limits on cross-examination to ensure relevancy or because of concerns regarding such matters as harassment, prejudice, confusion of the issues, and repetitiveness. A court must exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. [*People v Biddles*, 316 Mich App 148, 153-154; 896 NW2d 461 (2016) (quotation marks and citations omitted); see also MRE 611(a).[2]]

"MRE 403 states that although it is relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, *waste of time,* or *needless presentation of cumulative evidence*." *People v Duenaz*, 306 Mich App 85, 99; 854 NW2d 531 (2014) (emphasis added).

We opine that the limitations imposed by the trial court on defense counsel's cross-examination of complainants were proper. The trial court first instituted restraints on KP's cross-examination during the second day of her testimony because defense counsel repeatedly summarized KP's prior testimony and advanced statements without asking questions. Following the cross-examination of KP and the dismissal of the jury, the court admonished counsel for *both* parties stating:

---

[2] MRE 611(a) governs the mode and order of examining witnesses and presenting evidence, including the scope of cross-examination.

*The Court*: The prosecutor is gonna redirect. I'm indicating to the prosecutor I don't want to hear questions to repeat what they said on direct. That's already in the evidence. You're only to ask questions to clear up anything that you may think, but to—if we ask questions that repeat what's said, I'm gonna stop you.

[*Prosecution*]: Yes, Judge. Understood.

*The Court*: Now, look it, I don't want to interrupt you parties. I don't want to interrupt your—your cross-examination. I'm telling you this so that you listen to me, and you do it yourselves. I'm only gonna stop because that—I mean, cross-examination is not repeating over and over and over again the same thing. We have to move on, all right? I mean, no wonder we're gonna be here until next week. We're just repeating ourselves. So, I'm not gonna allow that to happen.

When defense counsel asked for clarification, the court advised defense counsel to ask a greater number of leading questions without restating the prior testimony, and the trial court provided examples. However, defense counsel apparently failed to heed the court's instructions, and she continued to advance similar duplicative statements during AA's testimony.

While Peterson asserts that the trial court's interjections curtailed his counsel's ability to cross-examine complainants, the record indicates that the trial court encouraged defense counsel to ask novel questions, rather than make repetitive remarks, but defense counsel neglected to do so. Moreover, the court's criticism concerning the duplicative nature of the examination was issued toward the prosecution and defense counsel. See contra, *Swilley*, 504 Mich at 389-390 (stating, "The prosecution's side of the case, however, was not subjected to equal judicial treatment," and, "On the whole, the judicial questioning was imbalanced in both frequency and manner, decidedly in favor of the prosecution and against the defense. This too supports a conclusion of judicial partiality"). Consequently, the trial court was permitted to sua sponte restrict defense counsel's redundant line of questioning. See *Willis*, 322 Mich App at 590-591 ("While a defendant's constitutional right to confront his accusers is secured by the right of cross-examination guaranteed by the Confrontation Clause, a court has latitude to impose reasonable limits on cross-examination.") (Citations omitted).

Peterson further contends it is improper to restrict cross-examination on "asked-and-answered" grounds, but he fails to cite to any precedent to support this argument. As noted, "It is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty." *Willis*, 322 Mich App at 590. Regarding judicial intervention under asked-and-answered principles, commentator Ronald S. Longhofer has explained:

Where questions that have already been answered by the witness are repeated, in form or substance, the appropriate objection is "asked and answered." This objection is derived from Rule 611's express purpose of avoiding "needless consumption of time," as well as Rule 403's "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." While this objection is most commonly made during direct examination, to counter an effort to emphasize certain testimony unfairly, it has been held proper to restrict cross-examination as

well where repetitive questions are asked. However, more latitude for repetition is normally allowed on cross-examination. [2 Longhofer, Michigan Court Rules Practice, Forms (4th ed), § 611.6.4, commentary, pp 337-338.][3]

Federal courts have reached similar conclusions regarding the propriety of curtailing cross-examination because of the repetitive nature of defense counsel's questioning.[4] See *United States v Powers*, 500 F3d 500, 512 (CA 6, 2007) ("Most of the court's comments can be construed as attempts to keep the parties focused on the issues related specifically to the crime charged and to prevent counsel from asking repetitive questions.") See also *United States v Guerrier*, 521 F Supp 3d 527, 533 (MD Pa, 2021) (opining that "it is within the discretion of the district court to impose "a reasonable limit on the scope of cross-examination . . . in order to strike a balance between the constitutionally required opportunity to cross-examine and the need to prevent repetitive or abusive cross-examination") (alteration in original; quotation marks and citation omitted). Moreover, despite the judicial intervention in the present case, Peterson was able to elicit from complainants "the information that he sought and to present his theory of the case to the jury in a coherent fashion." *Powers*, 500 F3d 500 at 513; see also *United States v Gray*, 105 F3d 956, 964-965 (CA 5, 1997) (finding no reversible error when the district court's interventions "sometimes broke the flow of the defense presentation," but "[t]he relevant facts were brought to the jury's attention, and the defendants' counsel were able to interpret the facts favorably to their clients during closing argument"). For these reasons, the nature of the judge's conduct weighs against concluding that the judge pierced the veil of judicial impartiality.

## B. THE TONE AND DEMEANOR OF THE TRIAL JUDGE

We next examine "the tone and demeanor of the trial judge." *Swilley*, 504 Mich at 381.[5] "Because of the jury's inclination to follow the slightest indication of bias on the part of the judge, [t]o ensure an appearance of impartiality, a judge should not only be mindful of the substance of his or her words, but also the manner in which they are said." *Id*. at 381 (quotation marks and citation omitted). "It is possible for a court to deprive a party of a fair trial without intending to do so if the manner in which the judge conducts the case gives a plain exhibition to the jury of his own opinions in respect to the parties . . . ." *Stevens*, 498 Mich at 174-175 (quotation marks and citation omitted). "[I]t is not necessary to impute to the judge any intentional bias; on the contrary, the initial assumption is that a trial judge designs to be impartial." *Id*. at 175. "Though appellate courts typically do not witness a trial judge's tone and demeanor first hand, a judge's hostility,

---

[3] Commentary on court rules is not binding but may be considered persuasive. *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 585; 644 NW2d 54 (2002).

[4] "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Walker*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019) (quotation marks and citation omitted).

[5] We note, "It will often be the case that analysis under this factor will dovetail with analysis of the nature and type of judicial conduct; the manner in which the judge's inquiry is made will affect how the jury perceives the conduct." *Stevens*, 498 Mich at 186.

bias, or prejudice can sometimes be gleaned from the nature or choice of the words used by the judge or the series or structure of the court's questions." *Swilley*, 504 Mich at 381.

Peterson contends the trial court inappropriately belittled defense counsel by advancing "frequent remarks about how trial counsel was needlessly repeating certain inquiries and wasting the jury's time," and making imprudent comments, including: "We don't have time for it. I'm an old man. I'm not gonna be alive forever." Peterson additionally cites to the court's statement: "[T]hat's why [the jurors are] taking notes and everything. They're—what do you think we got here, empty shells over here? Everybody has a brain, just like you do." During cross-examination, the trial court further expressed, "What's your question? Ask the question. We've been here for two hours. Ask the question. What question do you have?" The court additionally asserted, "[T]hese people have a life beyond the Court," and, "[I]f you don't have a new question, I'm stopping cross-examination."

"In general, however, a trial judge's comment that is critical of or hostile to a party or his or her counsel is not sufficient to pierce the veil of judicial impartiality." *Willis*, 322 Mich App at 590. Although the trial court's behavior was not a model of decorum, the contested utterances do not constitute judicial misconduct. The court's remarks were in response to defense counsel's repetitious questioning of complainants, and its commentary did not reflect "a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible," on the trial court's part. *Jackson*, 292 Mich App at 598 (quotation marks and citation omitted). Additionally, as previously discussed, the trial court was permitted to limit defense counsel's cross-examination to "avoid needless consumption of time." *Biddles*, 316 Mich App at 154; see also *Willis*, 322 Mich App at 591 ("The record shows that the trial court appropriately exercised its discretion to control the trial to prevent improper questioning of the sergeant and avoid wasting time.") Notably, the trial court's language became harsher and more vexed as defense counsel continued to ignore the court's instructions. See *Biddles*, 316 Mich App at 154 ("[The] defendant focuses on the trial judge's interruptions and apparent growing frustration with defense counsel, but fails to acknowledge that defense counsel talked back to the judge and ignored the judge's directives to move on and rephrase questions, which necessitated many of the judge's repeated interruptions.")

Further, the trial court judge acknowledged that he raised his voice during cross-examination, and he attempted to remedy such by addressing the jury and stating, "I have a lot of passion, okay? So, you heard me, and—and when I talk and I raise my voice, please understand something. Both of these attorneys are very fine attorneys." This Court has additionally noted when "the trial court and appellant butted heads throughout defendant's proceedings . . . it cannot be said that the trial court's objective aggravation with appellant stemming from appellant's own disobedience evidenced anything more than frustration, and it certainly did not rise to the level of actual bias or prejudice." *In re Contempt of Henry*, 282 Mich App 656, 681; 765 NW2d 44 (2009). While the judge used a severe tone during cross-examination, the judge's statements were "not of such a nature as to unduly influence the jury," and the record demonstrates that the trial court judge properly exercised his authority to control the trial and prohibit excessive and duplicative questioning of complainants. *Biddles*, 316 Mich App at 154. Accordingly, this factor weighs against a determination that the court pierced the veil of judicial impartiality.

## C. THE CONTEXT AND SCOPE OF THE JUDICIAL CONDUCT

We further "consider the scope of judicial intervention within the context of the length and complexity of the trial, or any given issue therein." *Stevens*, 498 Mich at 176. "In a long trial, or one with several complicated issues posed to the jury, for instance, it may be more appropriate for a judge to intervene a greater number of times than in a shorter or more straightforward trial." *Id*. "[A] reviewing court should not simply evaluate whether the trial as a whole was long or involved complicated issues. A reviewing court must *also* evaluate *the complexity of the particular issues* that were subject to judicial inquiry." *Swilley*, 504 Mich at 387.

The trial court judge's interventions transpired during the cross-examination of complainants during a five-day trial. At trial, complainants testified regarding Peterson's sexual abuse. While neither complainant's testimony included technical or scientific detail, each described multiple instances of sexual assault spanning many years, beginning when they were young children. Given the length of the sexual abuse and the number of alleged assaults, the trial court's desire to avoid unnecessarily repetitive questioning is understandable, particular after it instructed defense counsel to halt her reiterations of complainants' testimonies. Moreover, the trial court's interventions occurred only after complainants' cross-examinations had continued for a significant period of time, the court did not question complainants or substantively comment on complainants' testimonies, and Peterson does not contend that the trial court impermissibly interjected during the cross-examination of other witnesses. See *Jackson*, 292 Mich App at 599-600 ("Considering the limited context in which the court's statements were made, they were not sufficient to pierce the veil of judicial impartiality and deprive defendant of a fair trial.") Cf. *Swilley*, 504 Mich at 382 ("[T]he trial judge treated [the defense witness] with hostility and took a prosecutorial tone in questioning the witness," and despite the relatively straightforward nature of the defense witness's testimony, "the judge intervened extensively and inappropriately.") Therefore, this factor also supports the conclusion that the judge did not pierce the veil of judicial impartiality.

## D. THE DIRECTION OF INTERVENTION

"In tandem with assessing the judge's conduct in light of the trial's length and complexity, it is also important to consider whether this intervention was directed toward a particular party, so as to distinguish excessive but ultimately neutral questioning from biased judicial questioning." *Stevens*, 498 Mich at 188. "Judicial partiality may be exhibited when an imbalance occurs with respect to either the frequency of the intervention or the manner of the conduct." *Id*. at 177. "This inquiry is therefore twofold: in order to determine whether judicial questioning was imbalanced, a reviewing court must evaluate *both* the frequency of the questions *and* the manner in which they are asked." *Swilley*, 504 Mich at 388.

In the present case, there was not a judicial imbalance regarding the trial court judge's treatment of the parties. As noted previously, the court instructed both the prosecution and defense counsel to avoid redundant statements or questions during its examination of the witnesses, and the trial court judge similarly restricted the prosecution's redirect examination of complainants on asked-and-answered grounds. Although the trial court interrupted defense counsel more frequently and sternly, its interventions occurred because defense counsel repeatedly disregarded

the trial court's instructions regarding duplicative questioning and in order to preserve judicial economy. See *Gray*, 105 F3d at 964 (opining that "we find it fair to say that the district court's actions are characterized not by partiality for the prosecution, but by antipathy to wasted trial time"). Thus, this factor also weighs against holding that the judge pierced the veil of judicial impartiality.[6]

### E. THE PRESENCE OF A CURATIVE INSTRUCTION

Lastly, "we consider the presence or absence of curative instructions." *Stevens*, 498 Mich at 190. A "curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Id*. at 177. But a judge's administration of curative instructions does not always ensure that a defendant has received an impartial trial; "in some instances judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality." *Id*. at 177-178. "This factor is not considered in isolation; rather, the totality-of-the-circumstances test requires that this factor be considered alongside the others." *Swilley*, 504 Mich at 390 (quotation marks and citation omitted).

In this case, before the cross-examination of AA resumed, the trial court stated the following to the jury:

> Ladies and gentlemen of the jury, I mean, you've watched this case, I've told you before, I have a lot of passion, okay? So, you heard me, and—and when I talk and I raise my voice, please understand something. Both of these attorneys are very fine attorneys. They are both presenting their case. They are advocates for their cases. I am an impartial tribunal. So, each attorney has their own ideas of what they think they—is proper, and no one—and none of these attorneys are trying to do anything improper, they are trying to get in their evidence. So, when I'm trying to—and I'm trying to control. Now, what I'm trying to say is I'm not any

---

[6] We further note that during jury selection, the trial court judge stated, "By the way, as you know, I'm—I'm an old man. These attorneys are here to help me. I very much appreciate their help. They're very fine attorneys, and again, I—I appreciate their help. So, I don't mind when they interrupt, especially when I'm doing something wrong . . . . " The judge further instructed the counsel for *both* parties during jury selection, "Remember, I want new questions, and not repeated questions," and:

> I want everybody to understand this. This is voir dire, and I appreciate both of you, you're both advocates, and you're both very good at what you do, I don't have any problem with either one of you, and I'm not criticizing either one of you, I'm just telling you, as the impartial tribunal, you're overstepping your bounds. Argument is for closing argument only, that comes at the end of the case after all the testimony is in, all right?

Such statements further indicate that the trial court judge did not overtly criticize a single party, rather, the judge advanced his grievances toward both the prosecution and defense counsel.

better than them. However, I have a duty of trying to make the case run efficiently, so that's what I'm doing. Nothing that I have done is meant to impugn either one of these attorneys. They're fine attorneys. They're fine advocates for their side. I want you to listen to them and listen to what they're doing. All I'm trying to do is move the case along. Everybody understand that?

The court further clarified matters to the jury during its final instructions explaining:

> My comments, rulings, questions, and instructions are also not evidence. It is my duty to see the trial is conducted according to the law and to tell you the law that applies to this case. However, when I made a comment or give an instruction, I am not trying to influence your vote or express my personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide the case from the evidence.[7]

The trial court's instructions were sufficient to cure any alleged error. See *Willis*, 322 Mich App at 391-392 (concluding that "to the extent that the trial court's conduct could be deemed improper, its instructions were sufficient to cure any error," because, "the trial court instructed the jury that the case must be decided only on the evidence, that its comments and rulings were not evidence, that it was not trying to influence the vote or express a personal opinion about the case when it made a comment or a ruling," and that any imputed opinion of the court must be disregarded). The trial judge explained his impassioned conduct, emphasizing that his interjections were not a reflection on defense counsel's abilities, but rather an effort to ensure the structure and efficiency of the proceedings. See *Biddles*, 316 Mich App at 155-156 (in determining that the jury instructions "weigh against a conclusion that the trial judge pierced the veil of judicial impartiality and deprived defendant of a fair trial," that "the trial judge explained to the jury that she had a responsibility to ensure that the trial was run efficiently and fairly"). Consequently, to

---

[7] The trial court additionally stated the following in its opening instructions to the jury:

> My responsibility as Judge is to see that this—that in—in this trial are to make sure that the trial is run fairly and efficiently, to make decisions about evidence, and to instruct you about the law that applies to the case. Now, I'm a very passionate guy, as you probably have seen. So, when I say something, if I raise my voice or I say—I don't mean to reflect—I don't mean to reflect either—on either one of these attorneys. All three of these attorneys, they are fine attorneys, they're doing their very best, and they're representing their clients. So, they're—they're involved in presenting a position of their—their clients. I am an impartial tribunal, so when I say something, I'm—I—I may be passionate. Don't hold it against either one of these attorneys. All I'm trying to do is move the case along, sometimes I move it, and sometimes I might be wrong. I want you to know that. So, I'm just a human being like all the rest of you. So, don't hold anything that I do against either one of these attorneys or their clients . . . .

the extent the trial court committed any misconduct, it was remedied by the court's curative instructions.

## IV. CONCLUSION

Considering the totality of the circumstances, we conclude that the trial court did not pierce the veil of judicial impartiality. The trial judge's conduct did not improperly influence the jury by creating the appearance of advocacy or partiality against Peterson, nor did it otherwise deprive Peterson of a fair trial. The trial court permissibly restricted defense counsel's cross-examination of complainants, albeit sharply, to preserve the orderly administration of the trial and account for defense counsel's failure to curtail her repetitive questioning. Further, the presence of the proper curative instructions rectified any error.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi