*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NICHOLAS LEE TRACKWELL,

Defendant-Appellant.

UNPUBLISHED
April 13, 2026
1:23 PM

No. 374277
Wayne Circuit Court
LC No. 24-002820-01-FH

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Defendant, Nicholas Lee Trackwell, appeals by right following his conviction by a jury of third-degree child abuse in the presence of another minor, MCL 750.136d(1)(d), and domestic violence, MCL 750.812. On appeal, defendant contends that his convictions should be set aside because: (1) the trial court erred by piercing the veil of judicial impartiality, thereby denying him a fair trial, and (2) there was insufficient evidence to sustain his conviction for third-degree child abuse. We disagree with defendant's arguments on both issues, and therefore affirm.

## I. BACKGROUND AND FACTS

This case arises from a domestic altercation that occurred in March 2024. Defendant is the father of BT (12 years old at the time) and MT (seven years old), as well as an infant. JD is the children's mother.

JD, BT, and MT all testified at trial. On the day in question, defendant arrived at the home in the middle of the night. That morning, he became angry about broken computer equipment, threatened to beat JD and the children, and began throwing JD's possessions out of the house. JD went into her bedroom to call the police, and defendant broke through part of the door to the bedroom, reached his hand through the broken door, and pulled at her hair. BT attempted to stop defendant and punched him in the face. While MT was present, defendant kicked BT, pushed him to the floor, stomped on his hand, and hit him in the back of the head with a glass bottle.

-1-

Defendant also testified at trial. According to defendant, the bedroom door already had an opening in it, and he reached through it to unlock the door so he could retrieve his car keys and leave. Defendant also denied having assaulted BT as alleged.

The jury found defendant guilty as stated,[1] and defendant was sentenced to one year of probation for each conviction. Defendant now appeals.

## II. STANDARDS OF REVIEW

Whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). We also review de novo a challenge to the sufficiency of the evidence supporting a conviction. *People v Parkinson*, 348 Mich App 565, 573; 19 NW3d 174 (2023).

## III. ANALYSIS

## A. JUDICIAL IMPARTIALITY

Defendant argues that the trial court's conduct during defendant's testimony—by interrupting counsel, and by questioning defendant in front of the jury—breached the veil of judicial impartiality and undermined defendant's credibility, resulting in an unfair trial. We disagree.

As a threshold matter, because defendant did not object to the trial court's conduct at trial, this issue is unpreserved, so we review it "for plain error affecting defendant's substantial rights." *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). And "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (cleaned up).

The third requirement of the plain-error test—that the error affected the defendant's substantial rights—"generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. But when a forfeited error is "structural," the third prong of the plain-error test is automatically satisfied (the defendant need not show outcome-determinative prejudice), and there is a formal presumption in favor of reversal. *People v Davis*, 509 Mich 52, 74-75; 983 NW2d 325 (2022). Our Supreme Court has held that piercing the veil of judicial impartiality is a structural error. *Stevens*, 498 Mich at 178. Therefore, if a defendant prevails on the first two requirements of the plain-error test in the context of a judicial-impartiality claim, the third requirement is automatically met and there is a formal

---

[1] The jury acquitted defendant of fourth-degree child abuse, MCL 750.136b(7). The fourth-degree charge arose from an allegation that defendant shoved MT against a wall.

presumption in favor of reversal.  *People v Plomb*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368608); slip op at 10.

Turning to the merits of defendant's claim, "[a] trial judge has broad, but not unlimited, discretion when controlling the court's proceedings." *People v Boshell*, 337 Mich App 322, 347; 975 NW2d 72 (2021).  "The overriding principle is that a court's actions cannot pierce the veil of judicial impartiality." *Id*. at 348.  "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171.  "This is a fact-specific inquiry, and this Court considers the cumulative effect of any errors." *People v Willis*, 322 Mich App 579, 588; 914 NW2d 384 (2018) (quotation marks and citation omitted).  "A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is so egregious that it pierces the veil of impartiality." *Id*. (quotation marks and citation omitted).  Trial-court proceedings carry "a heavy presumption of judicial impartiality." *Id*.

In evaluating the totality of the circumstances, we must "inquire into a variety of factors," including

> [1] the nature of the judicial conduct, [2] the tone and demeanor of the trial judge, [3] the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, [4] the extent to which the judge's conduct was directed at one side more than the other, and [5] the presence of any curative instructions. [*Stevens*, 498 Mich at 172.]

We will examine each factor in turn.

### 1. NATURE OF THE JUDICIAL CONDUCT

"Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id.* at 172-173.  In this case, defendant complains that the trial court interrupted defense counsel's examination of defendant multiple times and engaged in its own examination of defendant after the prosecutor's cross-examination was complete.

We begin with the trial court's interruptions of defense counsel's examination.  The Code of Judicial Conduct, quoted approvingly in *Stevens*, states that "[a] judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity," while warning that "undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on the judge's part toward witnesses . . . may tend to prevent the proper presentation of the cause, or the ascertainment of truth in respect thereto[.]" Code of Judicial Conduct, Canon 3(A)(13), quoted in *Stevens*, 498 Mich at 174.[2]  In a number of

---

[2] *Stevens* cited Canon 3(A)(8); the relevant text is now found in Canon 3(A)(13).

instances in the proceedings below, the trial court told defendant's counsel to "move on." But a judge is permitted to "promote expedition." See *id.* At one point the trial court told defendant's counsel that a question regarding where defendant went after leaving the house was "not relevant." But, again, a judge "may properly intervene in a trial . . . to . . . prevent unnecessary waste of time." *Id.* Indeed, MCL 768.29 provides that "[i]t shall be the duty of the judge to . . . limit the introduction of evidence . . . to relevant and material matters . . . ." Defendant further cites to instances when the trial court instructed defendant not to testify about another witness's testimony, stating: "You can't say why somebody said something. They testified to the jury and told them why they said what they said, so that's what the jury has to go by." These interruptions were permissible insofar as they precluded one witness from improperly speculating regarding the testimony of other witnesses. At least one interruption was for clarification; the trial court asked defendant's counsel how defendant would know if a picture of JD was from the day of the incident. Counsel modified his question, and the trial court responded: "Okay. You can ask him that." Insofar as "the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty," *Willis*, 322 Mich App at 590, we conclude that the overall nature of the trial court's interruptions during defendant's testimony was within the bounds of that discretion.

We now turn to the trial court's own examination of defendant. After defendant's direct examination and cross-examination, the trial court stated: "I have a couple questions because I'm a little confused." The court went on to ask about what time defendant arrived at the home because there had been conflicting testimony. Defendant clarified the misunderstanding, explaining he did not live at the house every day and arrived a few days earlier. The court also expressed confusion about his testimony regarding why he wanted to enter the bedroom to retrieve his keys. The following exchange regarding the keys, which seems to be defendant's main focus on appeal, occurred as follows:

> *The Court*: Okay. All right. And so the keys you're saying to the truck were in the bedroom?
>
> *Defendant*: No, the car.
>
> *The Court*: They were in the car?
>
> *Defendant*: Two vehicles that I own.
>
> *The Court*: Okay. So the keys to the car were in the bedroom, not the keys to the truck?
>
> *Defendant*: Correct.
>
> *The Court*: So the keys to the truck you had on you?
>
> *Defendant*: I had them on me.
>
> *The Court*: So you could have left in the truck, correct?
>
> *Defendant*: Yes.

*The Court*: Okay. That's all I need to know.

Defendant argues that this exchange cast doubt on defendant's claim that he needed to enter the bedroom to retrieve his keys and undermined his credibility in front of the jury.

"[W]hen evaluating a judge's questioning of witnesses, a reviewing court must first bear in mind that such interrogation is generally appropriate under MRE 614(b)." *Stevens*, 498 Mich at 173.[3] Still, "judicial questioning has boundaries." *People v Swilley*, 504 Mich 350, 372; 934 NW2d 771 (2019). Although "it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information," *Stevens*, 498 Mich at 173, "the central object of judicial questioning should be to *clarify*," *id*. (emphasis added), and "[a] judge's responsibilities do not include emphasizing or exposing potential weaknesses in a witness's testimony or conveying the judge's personal view on whether a witness should be believed." *Swilley*, 504 Mich at 373. The judge, in other words, should not "invad[e] the prosecutor's role." *Stevens*, 498 Mich at 183.

On this record, defendant has not established that the trial court's questions exceeded the boundaries of what is permissible. To qualify for relief under the plain-error test that applies to this appeal, defendant must show not only that error occurred, but that it "was plain, i.e., clear or obvious." *Carines*, 460 Mich at 763. Here, the trial court prefaced its questioning with the statement, "I have a couple questions because I'm a little confused," and later stated, "That was my confusion. Okay. I didn't understand what was going on with the keys." As stated, asking questions to clear up confusion is appropriate judicial conduct under MRE 614(b). See *Stevens*, 498 Mich at 173. Defendant had testified that he sought access to the bedroom to retrieve the keys to his Ford Taurus but that he left the house in his truck after getting punched by BT. Insofar as the object of the trial court's questioning was to clarify defendant's testimony about what keys he needed to leave and where they were located, it is not reasonably likely that such questioning created an appearance of advocacy or partiality. See *id*. at 171. Although defendant argues that the trial court "honed in like a prosecutor on the location of the keys," it is not clear or obvious that the nature of the trial court's questioning was that of undermining defendant's credibility rather than clarifying the record, or that this line of judicial questioning—standing alone or together with other acts—demonstrated the appearance of advocacy or partiality on the whole. See *id*. at 171-172.

## 2. TONE AND DEMEANOR OF THE JUDGE

"To ensure an appearance of impartiality, a judge should not only be mindful of the substance of [their] words, but also the manner in which they are said." *Id*. at 175. Although "appellate courts typically do not have the benefit of viewing a trial judge's tone and demeanor firsthand," "in certain circumstances, the very nature of the words used by the judge can exhibit hostility, bias, or incredulity." *Id*. at 176.

---

[3] MRE 614(b) allows a court to "examine a witness regardless of who calls the witness." At the time *Stevens* cited it, MRE 614(b) provided: " 'The court may interrogate witnesses, whether called by itself or by a party.' " *Stevens*, 498 Mich at 173 n 4.

The trial court in *Stevens*, for example, asked the defendant what he did after he "allegedly" tripped. *Id.* at 185. The *Stevens* Court found the use of the word "allegedly" suggested the judge's disbelief in the defendant's testimony about whether he actually tripped. *Id.* The Court also found that the judge did not use similar words with other witnesses and was not asking a question to clarify a confusing point or elicit additional relevant information. *Id.* The trial court in *Stevens* also used phrases such as "that's just your opinion" when questioning witnesses. *Id.* at 186.

Here, by contrast, we detect no language used by the trial court that on its face exhibits hostility, bias, or incredulity. The record does not reveal a "skeptical, confrontational approach." *Swilley*, 504 Mich at 383. Mindful that we are working from the transcript alone and have no ability to observe the trial court's physical demeanor, tone of voice, or facial expressions, this factor does not weigh in favor of defendant's claim that the trial court pierced the veil of impartiality.

## 3. SCOPE

"[A] reviewing court should consider the scope of judicial intervention within the context of the length and complexity of the trial, or any given issue therein." *Stevens*, 498 Mich at 176. "A judge's inquiries may be more appropriate when a witness testifies about a topic that is convoluted, technical, scientific, or otherwise difficult for a jury to understand." *Swilley*, 504 Mich at 387 (cleaned up). "[W]hen testimony deals with a particular issue or topic that is not complicated or complex, the utility of judge-led questioning is more limited." *Id.*

Here, defendant testified about a straightforward and nontechnical issue. See *Swilley*, 504 Mich at 387 (explaining that a witness testified about their factual account of events which was "a relatively straightforward matter"). As such, all other things being equal, extensive or multiple interjections should be unnecessary. *Id.* Our review of the record does show that the trial court interrupted defense counsel's examination of defendant somewhat frequently, so if those interruptions were inappropriate or unjustified this factor would weigh in favor of a determination that the trial court had pierced the judicial veil of impartiality. As discussed above, however, the trial court's interruptions were properly within its duties and discretion under the Code of Judicial Conduct and MCL 768.29 to promote expedition, prevent a waste of time, keep the trial focused on relevant and material evidence, and clear up potential confusion. Therefore, the scope of the trial court's interruptions for these reasons does not weigh heavily in our analysis.

As for the trial court's questioning of defendant, this examination took up fewer than three pages of the trial transcript, as compared to about 23 pages of testimony in which the trial court was not asking questions. Additionally, although defendant was not testifying about a complex matter, the trial court primarily focused its questioning on clearing up parts of defendant's testimony that were unclear. Consequently, the scope of the trial court's intervention does not weigh in defendant's favor.

## 4. DIRECTION OF THE INTERVENTION

"[A] reviewing court should consider the extent to which a judge's comments or questions were directed at one side more than the other." *Stevens*, 498 Mich at 176-177 (citation omitted).

"Judicial partiality may be exhibited when an imbalance occurs with respect to either the frequency of the intervention or the manner of the conduct." *Id.* at 177.

In this case, the trial court's questions were somewhat imbalanced in frequency but not in manner. Defendant was not the only witness the trial court questioned. The court interrupted the prosecution to ask clarifying questions of JD when she was testifying. The court asked JD: "[I]s that a yes?" The trial court also asked JD to clarify who she was referencing during her testimony, and during cross-examination the trial court interrupted to ask about the width of the door panel. After direct and cross-examination, the court also asked JD whether she took BT and MT to the hospital within 48 hours of the incident. The trial court also interrupted the prosecution during BT's examination. The trial court asked, "is that a yes" much like it did with defendant. The trial court asked questions to clarify whether BT saw defendant grab JD's phone. The court also interrupted to make sure the correct finger was referenced on the record. At the end of direct and cross-examination, the trial court asked BT if his head was bleeding or if the wound was open, and the court asked multiple questions about the injury to BT's index finger.

The trial court asked defendant more questions than the other witnesses. But the overall manner of questions asked did not vary significantly because most were clarifying questions having to do with the witnesses' testimony. Overall, any disparity in the trial court's pattern of questioning was not so stark as to indicate a "deep-seated favoritism or antagonism" that would make fair judgment impossible. *Willis*, 322 Mich App at 590. Cf. *Swilley*, 504 Mich at 389 (explaining the trial court's "questions were imbalanced in both frequency and manner" because the judge questioned defense witnesses extensively and in a contentious fashion revealing the court's disbelief). Accordingly, this factor does not strongly weigh in favor of defendant's claim.

## 5. CURATIVE INSTRUCTIONS

"Lastly, the presence or absence of a curative instruction is a factor in determining whether a court displayed the appearance of advocacy or partiality." *Stevens*, 498 Mich at 177. "Because it is well established that jurors are presumed to follow their instructions, a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Id.* (cleaned up). That said, "a single, general instruction may not alleviate substantial judicial bias when judicial questioning of one party is excessive and imbalanced[.]" *Id.* at 190.

In the present case, the trial court instructed the jury: "If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion." The trial court also instructed the jury to only consider the evidence, and that the court's questions, comments, rulings, and instructions were not evidence. Although these general instructions would not necessarily cure the taint of judicial bias "when judicial questioning of one party is excessive and imbalanced," *Stevens*, 498 Mich at 190, or "combative and prosecutorial," *Swilley*, 504 Mich at 391, as a general matter this factor weighs against defendant in determining whether he received a fair trial.

## 6. CONCLUSION

In considering the totality of the circumstances, including but not limited to the five factors enumerated above, we conclude that defendant has not established that the trial court plainly erred by piercing the veil of impartiality so as to deny him a fair trial.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that there was insufficient evidence to sustain his conviction for third-degree child abuse. In particular, defendant asserts that there was insufficient evidence that defendant had a specific intent to physically harm BT. We disagree.

"This Court reviews de novo a challenge to the sufficiency of the evidence supporting a conviction." *People v Parkinson*, 348 Mich App 565, 573; 19 NW3d 174 (2023). "On appeal, we must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt." *People v Anderson*, 331 Mich App 552, 557; 953 NW2d 451 (2020). And "the standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (cleaned up). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Parkinson*, 348 Mich App at 574 (quotation marks and citation omitted).

Defendant was charged and found guilty of third-degree child abuse in the presence of another minor under MCL 750.136d(1)(D). "[T]he third-degree child abuse statute prohibits a person from knowingly or intentionally causing harm or damage to the state of a child's body or knowingly or intentionally committing an act that poses an unreasonable risk of harm or injury to a child and results in harm or damage to the state of a child's body." *People v Lawhorn*, 320 Mich App 194, 201; 907 NW2d 832 (2017). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). "Intent may be inferred from a defendant's use of physical violence." *People v Dillard*, 303 Mich App 372, 377; 845 NW2d 518 (2013). "[T]he extent of any injury and the presumption that one intends the natural consequences of one's acts are both proper considerations for the jury." *Id*. at 378. "Indeed, the injury actually inflicted need not be an injury specifically intended, but it can nevertheless be strongly probative of the intent to cause the requisite quantum of harm." *Id*.

BT testified defendant kicked him, pushed him to the floor, stomped on his hand, and hit him in the back of the head with a glass bottle. Regarding his hand, BT explained defendant "put his foot up, and then slammed it on [his] finger." After, BT's index finger and thumb hurt and were bruised and swollen. A photograph of the injury was admitted into evidence. JD testified defendant called BT a "b****" when he stepped on BT's hand.

Defendant's intent to harm BT may be inferred from his physical use of violence. See *Dillard*, 303 Mich App at 377. Specifically, the jury was permitted to infer defendant's intent to cause harm or damage to BT's body based on the testimony that he kicked and pushed BT, hit him in the head with a glass bottle, and stomped on his hand. The jury could also infer that defendant

intended to cause BT harm when he called BT a "b****" while stepping on his hand. A presumption that defendant intended the natural consequences of his acts, BT's injuries to his head and hand, were likewise proper considerations for the jury. Consequently, a rational trier of fact relying on witness testimony could find that defendant intended or knew that his actions would harm BT. Therefore, viewed in the light most favorable to the prosecution, the evidence was sufficient to sustain defendant's conviction for third-degree child abuse.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi